IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| REMBRANDT ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TECNO POULTRY EQUIPMENT S.P.A. f/k/a TECNO POULTRY EQUIPMENT S.R.L., <br><br> Defendant. | Case No. 5:21-cv-04007 <br><br><br> PLAINTIFF'S NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE |

## NOTICE OF MOTION

PLEASE TAKE NOTICE, that the undersigned will bring the following motions for hearing before the Honorable C.J. Williams, United States District Judge for the Northern District of Iowa on October12th at 3:00 PM, or as soon thereafter as counsel may be heard.

## PLAINTIFF'S MOTION IN LIMINE

Plaintiff Rembrandt Enterprises, Inc., moves this Court for an order in limine to exclude the following evidence at trial:

1. Any reference to insurance or the existence thereof pursuant to Rule 411 of the Federal Rules of Evidence and to prevent juror bias and prejudice.

2. Any attempt to offer evidence and/or testimony relating to the general conditions of the barns or the belts within the barns at Rembrandt in the time period leading up to the collapse. Only testimony relating to the manure in Row 1 of Barn 17 on the days leading up to the collapse is relevant pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence.

1

3. Any attempt to offer cumulative witness testimony relating to the conditions of Barn 17, specifically, the depth and weight of manure in the barn prior to its collapse, pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence.

4. Any attempt to offer evidence and/or layperson opinion testimony regarding the depth, density, and/or weight of the manure located in any of the barns and any unsupported layperson testimony assertion, implication, speculation, assumption or inference that the weight of the manure caused the collapse. *See* Federal Rules of Evidence 701 and 702, 401, 402, 403.

5. Any attempt to offer evidence and/or expert testimony regarding the samples of manure that were improperly collected on April 6, 2020 (51 days after the collapse) after the interior of Barn 17 had been exposed to the elements. Any evidence related thereto is scientifically unreliable, irrelevant and prejudicial pursuant to 401, 402, 403 of the Federal Rules of Evidence.

6. Any attempt to offer evidence or information pertaining to the OSHA investigation, the OSHA file, or OSHA'S withdrawn citations. Such notes and interviews are irrelevant and immaterial to the issues in this case pursuant to Rules 401 - 402, and are inadmissible hearsay under Rule 802 of the Federal Rules of Evidence. If admitted, even if relevant, its probative value would be substantially outweighed by the potential for unfair prejudice, as well as the potential to mislead and confuse the jury in contravention of Federal Rule of Evidence 403.

7. Any attempt to offer evidence or testimony about conditions in the barns or claimed mistreatment of the birds. This is not an animal rights case and any reference, innuendo, or testimony with respect to these statements would be improper, irrelevant and would only serve to inflame the passions or prejudices of the jury. *See* Fed. R. Evid. 401, 402 and 403.

8. Defendant should be estopped from any attempt to offer evidence or testimony that the top two metal self-tapping screws for the knuckle brackets were unnecessary or did not contribute to the cages' stability as such assertions contradict Defendant's previous actions and what has been established as true.

9. Any photographs, videos or other depictions of the collapse that were not taken directly after the loss as they do not depict the conditions at the time of the collapse. This evidence is irrelevant, misleading and prejudicial unless a proper foundation can be laid as to who took the photographs, when, where, and under what conditions or limitations. *See* Fed. R. Evid. 401, 402 and 403.

10. Any attempt to offer evidence or testimony implying/inferring that Rembrandt was to serve as the general contractor or as the supervisor for the construction of the cage system. This information is misleading and prejudicial. *See* Fed. R. Evid. 401, 402 and 403.

11. Defendant's experts with BakerRisk, Quentin Baker and Thomas Mander, should be precluded from testifying to opinions that do not satisfy the standard for the admission of

expert testimony established by Federal Rule of Evidence 702 and the *Daubert* decision and its progeny. Plaintiff has filed a separate brief in support of its *Daubert* Motion.

12. Any attempt to offer evidence or testimony relating to the enforceability of the contract and the supervision duties performed thereunder that were not produced during discovery.

The motion will be supported by Plaintiff's memorandum of law, the arguments of counsel, and all of the files, records, and proceedings herein.

## MEMORANDUM OF LAW

I. <u>Any reference to insurance or the existence thereof should be excluded pursuant to Rule 411 of the Federal Rules of Evidence and to prevent juror bias and prejudice.</u>

Plaintiff moves to bar all references to, mentions of, or implications that the parties were insured at the time of this incident. Under Federal Rule of Evidence 411, "evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." "When determining liability, it is improper for the jury to consider the relative wealth of the parties." *Morton v. Fort Madison Cmty. Hosp.*, No. 3:09-CV-179 RP-TJS, 2011 WL 13228431, at *2 (S.D. Iowa Aug. 16, 2011)(citing *Rosenberger Enter. v. Ins. Svc. Corp. of Iowa*, 541 N.W.2d 904, 907 (Iowa 1995)). Therefore, the parties should be precluded from referencing the fact that the parties were insured at the time of the collapse.

II. <u>Any attempt to offer evidence and/or testimony relating to the conditions of the barns or the belts within the barns in the time period leading up to the collapse should be precluded.</u>

It has been determined that the collapse of Barn 17 began in Row 1, and in a domino effect, pulled Rows 2-4 down on top of each other. As such any evidence regarding the conditions outside of Row 1 in Barn 17 is irrelevant to the loss at issue and would be unfairly prejudicial. *See* Fed. R. Evid. 401; 402; 403; (App. 0017). Defendant should, therefore, be precluded from making any mention or reference to the amount of manure in the other barns as well as any mention of the amount of manure in Rows 2-8 in Barn 17 in the time period preceding the collapse.

3

Additionally, any testimony relating to the amount of manure seen on the belts in Row 1 of Barn 17 should be limited to what was seen the day before or at the very most 7 days before the loss. It is important to note that in the week leading up to the collapse, L&K employees had been assigned to Barn 17 and had been scraping manure off the belts.[1] (App. 0128, 0233-0235). Meaning, manure had not been building up on the belts without mitigation for weeks or months prior to the collapse and therefore, any witness testimony regarding the conditions of Row 1 in Barn 17, prior to the week leading up to the loss, is irrelevant as such testimony would not reflect the conditions of Row 1 in Barn 17 on the day of the collapse. Any testimony outside of that timeframe would be used solely for the improper purpose of seeking emotional outrage from the jury and therefore it must be excluded. *See* Fed. R. Evid. 401-403.

In conjunction with the above, the court should also exclude any testimony relating to the number of nonworking belts in Barn 17 and any testimony regarding the smell of ammonia in the barn. Whether the belts were functioning on the day of the loss or on the days leading up to the loss is irrelevant given that L&K employees had been scraping the belts in Barn 17 in the days before the collapse. Similarly, the fact that Barn 17 smelled like ammonia is equally irrelevant, not to mention prejudicial, as odor does not cause or contribute to structural collapses, and it would be unusual **not** to smell ammonia in populated livestock barns.

---

[1] Rembrandt hired L&K Poultry Services, LLC ("L&K") to perform maintenance in the barns on the property. (App. 0183). As a part of that contract, L&K would provide workers for the purpose of cleaning manure belts, providing care to the barns in general, and packing eggs. (App. 0183). Up to thirty L&K employees would be present at Rembrandt six days a week working 10–11-hour days. (*Id*.).

III. The Court should limit any attempt by Defendant to offer cumulative witness testimony relating to the conditions in Barn 17, including, any cumulative testimony relating to the depth and weight of manure in the barn prior to its collapse.

It is within the court's power to exclude testimony that is repetitious and cumulative. *See* Fed. R. Evid. 403. Plaintiff anticipates that Defendant intends to call as many as 18 witnesses to testify as to the conditions in the barn prior to the collapse. Allowing Defendant to parade witness after witness arguably testifying to the same thing would cause undue delay and would waste the Court's and the jury's time on a needless presentation of cumulative evidence. *See Id.* Additionally, if Defendant is permitted to call multiple witnesses to testify to the conditions in the barn prior to the collapse, there is a substantial danger that the cumulative nature of the testimony may magnify the relevance of those pieces of evidence causing significant prejudice to Plaintiff. *See* Fed. R. Evid. 403.

Additionally, Defendant should only be allowed to introduce evidence that relates to the amount of manure in Row 1 of Barn 17 where analysis shows the collapse began. Any testimony as it relates to manure in the other barns or in the other rows or belts in Barn 17 is irrelevant, prejudicial, and would only serve to inflame the passions or prejudices of the jury as there is no evidence the conditions in the other barns or in Rows 2-8 in Barn 17 contributed to initiation of the loss. Fed. R. Evid. 401- 403; (App. 0008). Therefore, Defendant should be limited in the number of witnesses it may call as to any single topic and the scope of what those witnesses may testify to under Rule 403 as the prejudicial nature of the broad and cumulative testimony substantially outweighs any probative value. *See* Fed. R. Evid. 401-403.[2]

---

[2] In the alternative, the Court should issue a cautionary instruction to the jury that the amount and weight of manure in the other barns and the amount and weight of manure in the other rows or on any of the other belts in Barn 17 is irrelevant and should not be considered evidence during the jury's deliberation.

In addition, once Defendant identifies which witnesses it will call on this issue, Plaintiff requests it be allowed a brief voir dire or cross of each witness outside the presence of the jury to ensure their testimony is relevant to the collapse and will not steer off into irrelevant and prejudicial topics. Specifically, Plaintiff seeks to ensure that the identified witnesses have relevant information regarding the conditions in Row 1 of Barn 17 in the days leading up to the loss. Any general testimony about the conditions of Barn 17 as a whole, the depth of manure in rows 2-8, the number of non-working belts or the smell of ammonia in Barn 17 are all irrelevant, highly prejudicial and should not be part of any witness testimony.

IV. <u>Any attempt to offer evidence and/or layperson opinion testimony regarding the depth, density, and/or weight of the manure located in any of the barns and any unsupported layperson testimony assertion, implication, speculation, assumption or inference that the weight of the manure caused the collapse should be precluded.</u>

Plaintiff moves to exclude any opinion testimony from Defendant's lay witnesses—including but not limited to any of Rembrandt's current or former employees,[3] L+K employees, or Mark Fielder[4] regarding the amount of manure in Barn 17 on the day of the loss as well as any testimony that the amount of manure was the cause of the loss because any such testimony would not comply with Federal Rule of Evidence 701.

Lay witness testimony is only admissible if it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Rationally based on the perception of the witness" has been interpreted by courts to mean personal knowledge. *United States v. Simas*, 937 F.2d 459, 465 (9th Cir. 1991); *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005).

---

[3] This includes former Rembrandt employees and independent contractors.
[4] Mark Fielder is the compliance safety and health officer for OSHA who investigated this loss.

Here, Plaintiff anticipates Defendant will try to offer opinion testimony from Rembrandt employees and Mr. Fielder about the conditions in the barns at the time of the collapse including the amount and weight of manure on the barn's belts and that the buildup of manure in Barn 17 was the cause of the collapse. Such opinion testimony is improper because it lacks foundation and invades the province of the jury.

Defendant has provided no evidence or information that any of the Rembrandt employees have personal knowledge regarding the specific amount and/or weight of the manure located in Barn 17 as a whole, let alone in Row 1 of Barn 17, on the day of the loss. There is no evidence that any of the Rembrandt employees ever measured or weighed the amount of manure in Row 1 of Barn 17, and there is certainly no evidence showing that the Rembrandt employees have personal knowledge regarding whether the manure was the cause of the collapse. Any such testimony would be based on pure speculation.[5] Therefore, any opinion testimony from Rembrandt employees regarding the amount and weight of manure located in Row 1 in Barn 17 on the day of the collapse should be excluded. Additionally, any opinion testimony from Rembrandt employees that the buildup of manure was the cause of the collapse should similarly be barred.

Plaintiff also anticipates that Defendant will attempt to offer similar opinion testimony from Mr. Fielder. Plaintiff believes Defendant will try to have Mr. Fielder testify about the amount of manure in Barn 17 at the time of the collapse and that the weight of the manure was the cause of the collapse. Such testimony would be improper because it lacks foundation, as Defendant has not provided any evidence or information that Mr. Fielder has personal knowledge to testify about

---

[5] Many of the employees had not been in Barn 17 for a number of days, weeks or even months before the collapse and some simply cannot remember the last time they were in Barn 17; therefore, their testimony is irrelevant and unreliable as to the conditions in Barn 17 on the day of the loss and would be clearly prejudicial under 401 and 403 of the Federal Rules of Evidence; (App. 0310-0311, 0344, 0417, 0150, 0542-0543, 0599, 0614-0615, 0639, 1105).

1). the amount of manure in Barn 17 on the day of the loss; 2.) the amount of manure specifically in Row 1 of Barn 17 on the day of the collapse; [6] and 3). that the weight of manure caused the collapse.[7] Hence Mr. Fielder should also be precluded from proffering evidence and/or testimony on these issues.

---

[6] Q: So, did you personally measure the depth of the manure at any location in Barn 17?
A: No, because we couldn't get in because of the collapse.
Q: Okay. So, what you know about the depth of the manure comes from the interviews that you conducted?
A: Majority, Yeah.
Q: Any other source?
A: just seeing it on the ground.
Q: Okay.
A: But it had all changed from the collapse. . .
Q: Do you know if the manure was built up on the belts that were working in 17?
A: I have no idea. . .
(App. 0757-0758, 0763).

[7] Q: Okay. Have you had any training in structural collapses?
A: Not engineering-wise, no.
Q: You're not a licensed professional engineer?
A: No. . .
Q: . . Have you taken any courses in construction, like mechanical engineering or structural engineering, that would be relevant to a collapse of a system like this cage system?
A: Just as far as safety . . . it's not an engineering class if that's what you are asking.
Q: You mentioned that - - That you had an idea of what caused the collapse. What is that idea?
A: I would assume just the manure, the weight of the manure.
Q: And why would you assume that?
A: From the employee interviews and the amount of manure we saw piled up. . .
Q: Okay. You used the term "assume."
A: It would have contributed, I thought.
Q: Okay. But you didn't investigate any potential structural deficiencies in the system at the same time; fair?
A: It was never noticed that any was missing.
Q: Okay. The employees were questioned about the depth of the manure conditions in 17 but I didn't see any questions in your interviews with them about missing screws; is that fair?
A: I don't recall if I didn't see them, probably wasn't asking about them.
(App. 0708, 0715, 0769-0770).

In the alternative, if Defendant intends to call the witnesses listed above as non-lay opinion witnesses to offer testimony under Federal Rule of Evidence 702, this Court should bar Defendant from doing so because Defendant has not presented any evidence showing that either the Rembrandt employees or Mr. Fielder have the necessary qualifications in structural engineering to render expert opinions in this case. Federal Rule of Evidence 702 requires that an expert be qualified "by knowledge, skill, experience, training, or education" to have the requisite "scientific, technical or other specialized knowledge" to assist the jury in understanding the evidence. *See* Fed. R. Evid. 702. Neither the Rembrandt employees nor Mr. Fielder have sufficient training or education to meet those requirements; therefore, any attempt to introduce them as experts should be barred.

V. <u>Any attempt to offer evidence and/or expert testimony regarding the samples of manure that were improperly collected on April 6, 2020 (51 days after the collapse) after the interior of Barn 17 had been exposed to the elements should be precluded.</u>

Defendant should be precluded from introducing any evidence regarding the samples of manure that were taken almost two months after the loss as such evidence is scientifically unreliable, misleading, confusing, prejudicial and lacks foundation. *See* Fed. R. Evid 401-403 and Rule 702.

On April 6, 2020, Crane Engineering[8] collected a sample of manure from Barn 17. The sample was obtained 51 days after the collapse. The conditions in Barn 17 on April 6, 2020 were obviously not the same as they had been on the day of the loss. In the 51 days between the loss and the collection of the manure, the remains of Barn 17 had been exposed to rain, snow and ice as there were holes in the roof and walls had been cut open to remove the decedent, chickens, and cages. Chicken carcasses were also emulsifying into the ground/manure. This increased the

---

[8] Crane Engineering is now ESI.

amount of moisture in the barn, ultimately increasing the swelling of the manure. Further, the collection method itself was not appropriate and did not conform with industry standards. (App. 0909). For example, when the manure sample was collected it was compacted by hand into buckets, affecting the weight and density of the sample. (*Id*.) Therefore, any evidence relating to the manure's weight and density calculated from the April 6, 2020 samples are tainted, unreliable, misleading, and simply does not reflect the actual conditions at Rembrandt farm on the day of the loss.

In determining whether expert testimony will be admitted, the court must determine whether the expert's proposed testimony will "help the trier of fact to understand the evidence or to determine a fact in issue". Fed. R. Evid. 702. Defendant cannot satisfy this element as this requirement necessitates a threshold finding of reliability "because unreliable evidence cannot assist a trier of fact." *Williams v. Hedican*, 561 N.W.2d 817, 823 (Iowa 1997) (internal citations omitted); *See Bonner v. ISP Techs., Inc*., 259 F.3d 924, 929 (8th Cir. 2001)("the requirement that the evidence "assist the trier of fact to understand the evidence or determine a fact in issue" is a relevance requirement."). Therefore, any attempt to offer evidence and/or testimony regarding the April 6, 2020 manure sample should be barred.[9]

Additionally, such testimony lacks foundation as Baker Risk[10] did not perform the collection of the manure, nor was a representative of Baker Risk present when it was being

---

[9] In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the Supreme Court detailed the Rule 702 standard for admission of scientific evidence. "Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id*. at 594–95. Here, there are a number of identifiable issues with ESI's methodology effectively making its samples unreliable and inadmissible.

[10] Baker Risk has been identified as Defendant's engineering expert. (App. 1077-1080).

collected. Defendant, therefore, cannot lay the proper foundation for its admittance and such information should therefore be excluded. *See* Fed. R. Evid. 602.

VI. <u>Any attempt to offer evidence or information pertaining to the OSHA investigation, the OSHA file, or OSHA's withdrawn citations should be precluded.</u>

Plaintiff moves the Court to preclude Defendant from offering any evidence of the OSHA investigation including but not limited to any OSHA citations that were issued and subsequently withdrawn pertaining to the collapse. (App. 0746, 0747). Any information relating to the citations, particularly, is irrelevant and immaterial—especially since they were withdrawn— to the issues in this case pursuant to Federal Rules of Evidence 401 - 402.

In addition to the citations, the OSHA file includes a number of interviews with Rembrandt and L&K employees regarding the conditions in the barn and the "assumed" cause of the collapse. All of these interviews/statements are irrelevant and misleading as discussed in the sections above. Additionally, all of the interviews included in the OSHA file are improper hearsay, per Rule 802 of the Federal Rules of Evidence and are therefore inadmissible. *Cearfoss Const. Corp. v. Sabre Const. Corp.*, 1989 WL 516375, *3 (D.D.C. Aug.14, 1989) (handwritten notes including all statements quoted therein do not satisfy any exceptions to the hearsay rule and constitute inadmissible hearsay). Thus, the OSHA file in its entirety should be excluded.

VII. <u>Any attempt to offer evidence or testimony about conditions in the barns or claimed mistreatment of the birds should be barred.</u>

Plaintiff respectfully urges the Court to limit the trial testimony of Defendant's witnesses to exclude inflammatory statements regarding the conditions in the barns and the treatment and ultimate death of the birds due to the collapse or the need to euthanize them. Such testimony is irrelevant as it has no bearing on the cause of the collapse and any testimony to that effect would be extremely prejudicial under Federal Rule of Evidence 403.

The treatment of birds in large processing farms has become a hotly debated issue throughout the country.[11] Any statements intending to disparage Plaintiff and brand it as a cruel and inhumane entity is not only irrelevant but would result in significant and unavoidable prejudice. "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis, often an emotional one." *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997); *Old Chief v. United States*, 519 U.S. 172, 180 (1997)(" 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); *see also United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 948 (N.D. Cal. 2016).

The only purpose for proffering evidence relating to the treatment and living conditions of the chickens would be to vilify Plaintiff in front of the jury. There is very little if any probative value to this information, meaning it is substantially outweighed by the danger of its prejudicial effect. *See* Fed. R. Evid. 403. The inflammatory impact this testimony would have is exactly the kind of impermissible evidence that must be excluded as its only purpose would be to improperly influence the jury. *See Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 159 (Iowa 2004)(citing Weinstein's Federal Evidence § 403.04[1][c], at 403–43, 403–46 stating examples of unfairly

---

[11] In fact, there have already been numerous protests regarding the euthanization of chickens owned by Plaintiff due to avian flu. All American farms with flocks including birds with avian flu were required to euthanize the flock in order to prevent the spread of disease to other flocks and to wild birds. DES MOINES REGISTER, https://www.desmoinesregister.com/story/news/2022/04/25/minnesota-timberwolves-protest-iowa-chicken-killing-sasha-zemmel-animal-rights/7440814001/ (last visited Sept. 20, 2023); GLOBAL CITIZEN, https://www.globalcitizen.org/en/content/animal-rights-protester-nba-game/ https://www.mprnews.org/story/2022/04/28/amid-avian-flu-outbreak-activists-decry-poultrykilling-methods (last visited Sept. 20, 2023).

prejudicial evidence include evidence that "appeals to the jury's sympathies" or "provokes a jury's instinct to punish").

VIII. <u>Defendant should be estopped from any attempt to offer evidence or testimony that the top two metal self-tapping screws for the knuckle brackets were unnecessary or did not contribute to the cages' stability as such assertions contradict Defendant's previous actions and what has been established as true.</u>

Defendant should be prohibited from asserting that the top two self-tapping metal screws ("metal screws") for the knuckle brackets were unnecessary or did not contribute to the cage system's stability. Estoppel is defined as "a bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true." Black's Law Dictionary 277 (4th Pocket Ed. 1968).

Defendant designed the knuckle brackets to include the top two metal screws, which are depicted and specified in the Tecno instruction manual as well as in Tecno's bid for the cage system installation. (App. 1151-1255, 1131-1140). Additionally, Luca Tesser's and Childress' analyses via the input data in the SAP2000 model proves Plaintiff's assertion that the metal screws were necessary for the structure's stability. (App. 0001-0088). Therefore, Defendant should be estopped from testifying otherwise.

In addition, Rembrandt was billed and subsequently paid for thousands of metal screws that were *never* installed. (App. 0001-0088, 1141-1150). After the collapse, when all the missing screws were discovered, Rembrandt *re-ordered* and *re-paid* for thousands of metal screws to complete the caging systems in Barns 15, 16 and 18. (App. 1256-1262). At that time, Tecno knew the screws were missing from the original installations, and yet it still billed and shipped the replacement screws to Rembrandt.[12] At no time did Defendant inform Rembrandt that the missing

---

[12] Pursuant to Rules 804(b)(3) and 807, evidence relating to the duplicate billing and revenue received by Tecno in relation to the subsequent order for the metal screws will be presented as an

screws were unnecessary, superfluous or a waste of money. Defendant never completed a deductive change order or otherwise alerted Rembrandt to Tecno's current assertion that the screws were "unnecessary." Instead, Tecno accepted the order and kept the money, actions which are inconsistent and in direct conflict with Defendant's now—self-serving— contention that the metal screws were unnecessary.

Based on Defendant's conflicting statements/actions along with the evidence in the instruction manual and findings from the subsequent modeling, Defendant should be estopped from asserting that the metal screws were unnecessary to the structure's stability. To allow otherwise would only serve to confuse, mislead, and prejudice the jury. *See* Fed. R. Evid. 403.

IX. <u>Any photographs, videos or other depictions of the collapse that were not taken directly after the loss as they do not depict the conditions at the time of the collapse. This evidence is irrelevant, misleading and prejudicial unless a proper foundation can be laid as to who took the photographs, when, where, and under what conditions or limitations.</u>

The court must exclude any photographs, videos or other visual depictions taken of Barn 17 weeks and/or months after the collapse as those visual depictions fail to represent the conditions at the time of the collapse as the barn was open, unheated and suffered further deterioration due to exposure to rain, snow, ice and decomposing chicken carcasses. Therefore, such visual evidence is irrelevant and misleading and should be excluded per Rules 401-403.

---

admission against interest. As this Court is aware, a statement against interest can take many forms. As the Iowa Supreme Court said in *Barish v. Barish*, "any admission against interest must be received if relevant, whether it be found on a transcript or upon a pine shingle." 180 N.W. 724, 725, (1920); *See* Wigmore's Code of Evidence, Rule 128, § 980.

X. <u>Any attempt to offer evidence or testimony implying/inferring that Rembrandt was to serve as general contractor or as the supervisor for the construction of the cage system should be barred.</u>

Defendant should be precluded from inferring or implying that Rembrandt was acting as the general contractor during the installation of the caging system. As this Court is aware, Rembrandt contracted with Stanley & Sons to install the caging system at issue. Under the contract, Rembrandt was never considered the general contractor for the installation project, nor did Rembrandt agree to direct and/or control the caging system's installation. Rembrandt had no experience installing, operating or directing the installation of such a cage system. Instead, Rembrandt followed the recommendation of Larry Horst, Tecno's sales agent, who recommended Stanley & Sons for the job. Rembrandt then contracted with Tecno to provide supervision of Stanley & Sons during the installation of the caging system and to ensure the installation was completed in accordance with the Tecno Manual. Any inferences to the contrary would be a misrepresentation of the facts and would be offered for the sole and improper purpose of confusing the issues and misleading the jury; therefore, any testimony or evidence that infers or implies that Rembrandt operated as the general contractor should be excluded. *See* Fed. R. Evid. 403.

XI. <u>Any attempt to offer contrary evidence or testimony relating to the enforceability of the contract between the parties and the supervision duties performed thereunder that were not produced during discovery.</u>

There is no dispute regarding the validity of the contract between the parties. It is expected that at trial the admissibility of the contract will be stipulated to as the contract and its terms have been used as evidence by both parties in the various motions filed with this Court.

Additionally, it is undisputed that Techno had a contractual duty to supervise the assembly and installation of the Cage System at Rembrandt. Indeed, this Court has already found as much

in its November 8, 2022 Order and then again in its subsequent December 20, 2022 Order, in which the Court stated:

> [t]he parties contracted for defendant to provide a technician to supervise the installation of the System. Though this duty was one of contract, there was a nondelegable and independent duty to exercise due care in inspecting and supervising Stanley's work to prevent harm to people and property.

(Doc. 96, at 8) (internal citation omitted).

As this Court is aware, the existence of a duty is a question of law for the court. *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 718 (Iowa 1999). As this Court has already determined that a legal duty of care existed, Plaintiff Rembrandt seeks an order simply admitting: (1) the written contract as an evidentiary exhibit when offered; and (2) disallowing any evidence offered to suggest the contract was invalid or that Defendant did not have a duty to exercise due care to supervise Stanley & Sons.

Additionally, Rembrandt seeks an order from the Court on Rembrandt's objection to any evidence to be offered by Tecno that it met or complied with the duty to supervise the installation. Tecno has not offered, nor is there any evidence in the record that shows Tecno provided any supervision for the installation of the caging system. In the same vein, Rembrandt files this motion to lodge its objection opposing the offer of any new evidence by Tecno not previously provided or shared in discovery relating to the supervision of Stanley & Sons.

It has been established that Andrzej Golebiewski was the technician chosen by Tecno to supervise the installation of the Cage System at Rembrandt. (App. 1304, at 53:23-24). However, by Tecno's own admission, it failed to provide any supervision for the installation of the caging system. (App. 1267, at 17:8-9). This fact is not disputed. During Mr. Golebiewski's July 29, 2022 deposition, he indicated he did not know his duty was to supervise the installation of the Cage System and he only believed he was to check the pieces of the product as they were delivered.

(App. 1266, at 12:15-13:14). Mr. Golebiewski further denied during his deposition that he was supervising the installation of the Cage System at Rembrandt; denied that he was instructed to supervise the installation at Rembrandt; and stated that, in fact, no supervision was provided at all. (App. 1266-67, at 11:1-17:9). The undisputed evidence further shows defendant never gave instructions, checklists, documents or reports for Mr. Golebiewski to check or submit. (App. 1272-73, at 36:6-38:13). No other evidence has been presented by Techno on the issue of supervision.

Under the federal rules, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed R. Civ P. 37(c)(1). Thus, any attempts by Tecno to introduce new evidence to support a contention that it provided a technician other than Andrzej Golebiewski to supervise the installation would be improper as the identity of that person has not been produced and there is no evidence of record to prove the existence of another supervisor. Therefore, Rembrandt objects to any late identification of another technician allegedly serving in the capacity as "supervisor" for the installation of the cage system.

If such evidence is admitted at trial, Rembrandt will be unduly prejudiced as it will not have been able to depose this individual or to seek further discovery on what the alleged supervision entailed. As such, any new evidence on this issue presented for the first time at trial, should be excluded. *See* Fed. R. Evid. 403.

## **CONCLUSION**

Based on the foregoing arguments, Plaintiff respectfully requests that its Motion in Limine to exclude the following evidence be granted:

1. Any reference to liability insurance or the existence thereof pursuant to Rule 411 of the Federal Rules of Evidence.

2. Any attempt to offer evidence and/or testimony relating to the general conditions of the barns or the belts within the barns at Rembrandt in the time period leading up to the collapse. Only testimony relating to the manure in Row 1 of Barn 17 on the days leading up to the collapse is relevant pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence.

3. Any attempt to offer cumulative witness testimony relating to the conditions of Barn 17, specifically, the depth and weight of manure in the barn prior to its collapse, pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence.

4. Any attempt to offer evidence and/or layperson opinion testimony regarding the depth, density, and/or weight of the manure located in any of the barns and any unsupported layperson testimony assertion, implication, speculation, assumption or inference that the weight of the manure caused the collapse should be precluded. *See* Federal Rules of Evidence 701 and 702, 401, 402, 403.

5. Any attempt to offer evidence and/or expert testimony regarding the samples of manure that were improperly collected on April 6, 2020 (51 days after the collapse) after the interior of Barn 17 had been exposed to the elements. Any evidence related thereto is scientifically unreliable, irrelevant and prejudicial pursuant to 401, 402, 403 of the Federal Rules of Evidence.

6. Any attempt to offer evidence or information pertaining to the OSHA investigation, the OSHA file, or OSHA'S withdrawn citations. Such notes and interviews are irrelevant and immaterial to the issues in this case pursuant to Rules 401 - 402, and are inadmissible hearsay under Rule 802 of the Federal Rules of Evidence. If admitted, even if relevant, its probative value would be substantially outweighed by the potential for unfair prejudice, as well as the potential to mislead and confuse the jury in contravention of Federal Rule of Evidence 403.

7. Any attempt to offer evidence or testimony about conditions in the barns or claimed mistreatment of the birds. This is not an animal rights case and any reference, innuendo, or testimony with respect to these statements would be improper, irrelevant and would only serve to inflame the passions or prejudices of the jury. *See* Fed. R. Evid. 401, 402 and 403.

8. Defendant should be estopped from any attempt to offer evidence or testimony that the top two metal self-tapping screws for the knuckle brackets were unnecessary or did not contribute to the cages' stability as such assertions contradict Defendant's previous actions and what has been established as true.

9. Any photographs, videos or other depictions of the collapse that were not taken directly after the loss as they do not depict the conditions at the time of the collapse. This evidence is irrelevant, misleading and prejudicial unless a proper foundation can be laid as to who took the photographs, when, where, and under what conditions or limitations. *See* Fed. R. Evid. 401, 402 and 403.

10. Any attempt to offer evidence or testimony inferring/implying that Rembrandt was to serve as the general contractor or as the supervisor for the construction of the cage system. This information is misleading and prejudicial. *See* Fed. R. Evid. 401, 402 and 403.

11. Defendant's experts at BakerRisk, Quentin Baker and Thomas Mander, should be precluded from testifying to opinions that do not satisfy the standard for the admission of expert testimony established by Federal Rule of Evidence 702 and the *Daubert* decision and its progeny.

12. Any attempt to offer contrary evidence or testimony relating to the enforceability of the contract between the parties and the supervision duties performed thereunder that were not produced during discovery.

Respectfully submitted,

REMBRANDT ENTERPRISES, INC.

By: */s/*Thomas Henderson
    Thomas Henderson PK0002295
    WHITFIELD & EDDY, P.L.C.
    699 Walnut Street, Suite 2000
    Des Moines, IA 50309
    Telephone: 515-288-6041
    Facsimile: 515-246-1474
    Email: henderson@whitfieldlaw.com

and

 */s/*Lawrence T. Bowman
Lawrence T. Bowman, *pro hac vice*
Texas State Bar No. 00788993
David H. Fisk
Texas State Bar No. 24050602
GROTEFELD HOFFMANN LLP
2121 N. Pearl, Suite 300
Dallas, Texas 75201
Telephone: (214) 507-4581
Facsimile: (312) 601-2402
Email: lbowman@krcl.com
Email: dfisk@krcl.com

And*/s/*Kevin P. Caraher
Kevin Caraher (IA Bar No. AT0012838)

19

COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312-382-3100
Facsimile: 312-706-9792
Email: kcaraher@cozen.com

*Attorneys for Plaintiff*