**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| REMBRANDT ENTERPRISES, INC., | No. 21-CV-4007-CJW-MAR |
| Plaintiff, | **ORDER** |
| vs. | |
| TECNO POULTRY EQUIPMENT, SpA, f/k/a TECNO POULTRY EQUIPMENT, SRL, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

I.   DEFENDANT'S FIRST MOTION IN LIMINE……………………………… 4

II.  PLAINTIFF'S MOTION IN LIMINE……………………………………10

     A.   Reference to Insurance ……………………………………………10

     B.   Conditions of the Barns and Belts in Other Barns …………………12

     C.   Cumulative Evidence of Amount of Manure in Barn 17 ……………16

     D.   Evidence or Lay Person Opinion as to Depth and
          Weight of Manure……………………………………………18

     E.   Evidence or Expert Testimony About Samples of Manure
          From Barn 17 ………………………………………………20

     F.   OSHA Investigation Evidence …………………………………22

     G.   Conditions in the Barns and Mistreatment of Birds ………………24

H.     Evidence About Whether Self-Tapping Screws Were Necessary ..........26

I.     Photos and Depictions of Collapse ...............................................28

J.     Evidence/Argument that Plaintiff was General Contractor.................30

K.     Evidence Not Produced During Discovery ....................................31

III.     DEFENDANT'S MOTION IN LIMINE RE: CHILDRESS.......................33

IV.     DEFENDANT'S MOTION IN LIMINE RE: POWELL...........................36

V.     DEFENDANT'S SECOND MOTION IN LIMINE.................................39

A.     Injury or Death ........................................................................39

B.     Other Lawsuits or Claims...........................................................40

C.     Stanley's Status as Non-Party and Non-Appearance ........................40

D.     Non-Appearance of Potential Witnesses.......................................42

E.     Evidence Inconsistent With Court's Summary Judgment Ruling ..........42

F.     Testimony About Court's Prior Rulings.........................................44

G.     Argument About Court's Prior Rulings .........................................45

H.     Evidence of Cost of Repair and Replacement ................................46

I.     Evidence of Pre-incident Value of Property ...................................47

J.     Argument as to Replacement of Lost Poultry and Lost Profits............48

K.     Lay Opinion............................................................................50

L.     OSHA Citations ................................................................53

M.    Argument About Enforceability of Contracts ................................54

N.    Argument that Defendant Should be Punished ..............................56

O.    Evidence of Defendant's Financial Condition ..............................56

P.    Direct Appeals to Jurors .....................................................56

Q.    Evidence of Settlement Offers ..............................................56

R.    Evidence of Defendant's Insurance .........................................57

VI.    CONCLUSION ................................................................57

This matter is before the Court on the parties' multiple motions in limine.

Defendant filed its First Motion in Limine seeking to bar evidence that plaintiff suffered economic injury. (Doc. 119). Plaintiff filed a resistance. (Doc. 122). Defendant filed a reply. (Doc. 125). Defendant also filed an amendment to its first motion in limine. (Doc. 161).

Plaintiff then filed a motion in limine, seeking to bar a dozen categories of evidence. (Doc. 126). Defendant resisted the motion. (Doc. 131). Plaintiff filed a reply. (Doc. 135).

Next, defendant filed a motion in limine to limit testimony by plaintiff's expert Tony Childress ("Childress"). (Doc. 136). Plaintiff filed a resistance. (Doc. 150). Defendant filed a reply. (Doc. 136-5).

Defendant then filed a motion in limine to exclude or limit testimony by plaintiff's expert Daniel Powell ("Powell"). (Doc. 138). Plaintiff filed a resistance. (Doc. 151). Defendant filed a reply. (Doc. 138-2).

Finally, defendant filed a Second Motion in Limine seeking to bar a score of categories of evidence. (Doc. 139). Plaintiff filed a resistance. (Doc. 153). Defendant filed a reply. (Doc. 139-2).

For each of the motions and resistances above, the parties filed appendices consisting of many hundreds of pages.

On December 14, 2023, the Court held a hearing on the motions at the parties' requests.

For the following reasons, the Court **grants-in-part, denies-in-part, and holds in abeyance-in-part** the parties' motions.

## I. *DEFENDANT'S FIRST MOTION IN LIMINE*

Defendant seeks a pretrial order barring evidence that plaintiff suffered an economic injury, namely business interruption damages and damages for demolition and

cleanup, as a result of defendant's conduct. (Doc. 119). Defendant argues that plaintiff's negligence claim is premised on a common law duty under Restatement (Second) Torts § 323 ("Restatement § 323"), which limits recovery to "physical harm" to persons or property only. (*Id.*, at 2). Thus, defendant argues, plaintiff cannot seek economic damages as a matter of law. (*Id.*). Because it cannot seek those damages, defendant argues that any reference to the economic losses plaintiff allegedly suffered are irrelevant and should be barred to avoid undue delay and unfair prejudice under Federal Rules of Evidence 401, 402, and 403. (*Id.*, at 3).[1]

In its addendum to its first motion in limine, defendant concedes that Iowa case law supports recovery for demolition and clean-up of the building and equipment as direct property damage, and thus withdraws that portion of its first motion in limine. (Doc. 161). Defendant continues to assert, though, that demolition and clean-up of the system itself, as opposed to the building in which it was housed, are not recoverable. (*Id.*, at 2).

Plaintiff resists and argues that the duty defendant owed to plaintiff to supervise the installation of the poultry cage system arose under a theory of agency, not Restatement

---

[1] The Court agrees with plaintiff (Doc. 122, at 5 n.1) that this is really an untimely motion for partial summary judgment and not a motion in limine. Motions in limine are intended to address the admissibility of evidence under the Federal Rules of Evidence. A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Thus, "[m]otions in limine are meant to deal with discrete evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised as motions in limine." *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) (citation and internal quotation marks omitted). Here, defendant has bootstrapped the Federal Rules of Evidence by asserting that if the Court bars evidence of these damages, then they are irrelevant under the Federal Rules of Evidence. Well, of course, if a court grants partial summary judgment to bar a claim, then evidence of that claim is arguably irrelevant. That does not make the motion any less a dispositive motion. Nevertheless, the Court will address the motion on its merits.

§ 323. (Doc. 122, at 3). Regardless, plaintiff argues that under Iowa law any party who has been physically damaged by the negligence of another is entitled to recover for the economic damages related to that injury. (*Id.*). Plaintiff argues that defendant's motion is an attempt to relitigate the economic loss doctrine argument this Court previously rejected. (*Id.*). At oral argument, plaintiff also emphasized that the product that it purchased from defendant under the contract was the cage system itself, not as built. In other words, defendant asserts that it paid a separate company to install the cage system and make it operational, which was value added to the uninstalled cage system defendant delivered to plaintiff. Plaintiff argues that it should be able to recover the costs of demolition and clean-up of the cage system as installed.

Here, the Court found that defendant owed a duty to plaintiff, independent of their contract, to exercise due care in inspecting and supervising the third-party installer of the poultry cage system to prevent harm to people and property. (Doc. 96, at 8). In its ruling denying defendant's motion for summary judgment, the Court found a genuine issue of material fact as to whether defendant was negligent in its supervision of its employee charged with overseeing the installation of the poultry cage system. (Doc. 88, at 30-33). The Court found this duty arose from the agency relationship defendant had with its technician employee. (*Id.*). In reaching this conclusion, the Court did not cite or rely on Restatement § 323. (*Id.*).

Only after defendant filed a motion to reconsider did the Court address Restatement § 323. The Court noted that plaintiff resisted defendant's motion for summary judgment relying on Restatement § 323. (Doc. 96, at 8). The Court agreed with plaintiff that "it would have found" a genuine issue of material fact exists as to whether defendant would be liable under Restatement § 323. (*Id.*, at 8-9). Restatement § 323 provides that when one undertakes to render services—as defendant did here when it agreed to provide a supervisor to oversee the installation of its poultry cage system—

6

they must exercise reasonable care in doing so to avoid "physical harm" to persons and property. *Id.* The Court found there was a genuine issue of material fact requiring resolution by a jury whether defendant complied with this duty.

In both its original order, and in its order denying defendant's motion to reconsider, the Court rejected defendant's theory that the economic loss doctrine bars recovery for losses beyond the value of the cage system. (Docs. 88, at 24, 96, at 13). The cage system itself, uninstalled, was the property plaintiff purchased from defendant under the contract. The economic loss doctrine bars economic loss recovery when there is no physical harm to other property present and the only claim is breach of contract. *Am. Fire & Cas. Co., v. Ford Motor Co.*, 588 N.W.2d 437, 439 (Iowa 1999). Here, there is physical harm to other property.[2] If plaintiff can prove economic losses caused by the physical harm, it may recover those losses.

Even if plaintiff's theory of recovery was limited to Restatement § 323, the Court would not limit its loss claims here. By its plain terms, Restatement § 323 limits recovery to "physical harm" to persons and property. Although Restatement § 323 is silent as to whether a plaintiff may also recover economic losses as well, courts have found economic losses are not recoverable under this theory. *See Schaefer v. Indymac Mortg. Servs.*, 731 F.3d 98, 104 (1st Cir. 2013) (holding that "[w]hile the Restatement does not explicitly address whether economic losses, as opposed to losses resulting from physical injury, are recoverable for the breach of a voluntarily assumed duty, courts in a large number of jurisdictions have read the references to 'physical harm' in § 323 and § 324A of the Restatement as affirmatively precluding recovery for economic losses in such cases."). But *Schaefer*, and the other cases upon which defendant relies (Doc. 119, at 6 & n.1), did not involve actual physical harm to other property.

---

[2] Plaintiff concedes that under the economic loss doctrine, it will not seek damages for replacement of the cage system itself. (Doc. 122, at 11 n.8).

Defendant also cites *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74 (Iowa 2001), for the proposition that economic losses cannot be recovered when a negligence claim is premised on Restatement § 323. But *Theisen* is easily distinguishable because it was a cause of action for defamation, negligent investigation, and wrongful discharge and did not involve personal or property damage. The court's statement there that the defendant would be "only liable to the third person only for *physical* harm" is dicta because, as the court noted in the next sentence, the plaintiff there did not suffer any physical harm. 636 N.W.2d at 82 (emphasis in original).

Defendant's reliance on *Merriam v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 572 F.3d 579 (8th Cir. 2009), is also misplaced. Although that case did involve physical injury, the plaintiff there was not claiming economic damages arising from the physical injury but, rather, from the denial of his claim as an occupational benefit under an insurance policy. 572 F.3d at 585.

Here, plaintiff seeks to recover other property losses in the form of lost profits. Under Iowa law a plaintiff is entitled to recover for business interruption (lost profits) that result from damage to its property. The Iowa Supreme Court recognized that when property is destroyed, ordinarily damages are equal to the market value of the destroyed property, but "there may be an additional compensable loss when this results in a business interruption." *See Mills v. Guthrie Cnty. Rural Elec. Coop.*, 454 N.W.2d 846, 850 (Iowa 1990). The Iowa Supreme Court has acknowledged that "[i]n certain limited instances involving income generating property, lost profits is an acceptable measure of loss of use." *Id.* Here, plaintiff lost not just the cage system itself in the collapse, but also lost other property consisting of income-generating poultry. Under this limited circumstance, plaintiff is entitled to recover lost profits as well. *See also Ballard v. Amana Soc'y, Inc.*, 526 N.W.2d 558, 561 (Iowa 1995) (allowing recovery for lost profits

8

in a farrow-to-finish hog operation when toxic corn killed some pigs and injured other's ability to reproduce).

Plaintiff also seeks to recover losses in the form of demolition and cleanup costs both of the buildings holding the cage system as well as the cage system itself. Defendant does not contest plaintiff's ability to seek recover of the former, but resists recovery of the latter. Defendant argues that the demolition and cleanup costs, while tied to the physical harm, is not itself damages from physical harm to the property. (Doc. 119, at 9–10). Defendant recognizes that evidence may "touch on" the demolition and cleanup of the property, but argues that "evidence, argument, comment, or suggestion relating to the _costs_ of the demolition and cleanup, the alleged _damages_ associated with the interruption of [plaintiff's] operations, and any suggestion that [defendant] bears responsibility for such costs and/or damages must be excluded." (_Id._, at 10, n.4 (emphasis in original)). Then, in its reply brief, defendant further argues that the economic loss doctrine should bar plaintiff from recovering the costs of demolition and cleanup because loss of the product itself—the cage system—which plaintiff is not seeking damages for "logically also includes 'demolition and cleanup' costs associated with the product's repair or replacement. (Doc. 125, at 2).

The Court disagrees. Repair and cleanup costs are directly related to and derive from the physical damage caused by the collapse of the cage system. The contract here was for the cage system itself. Demolition and cleanup costs associated with the collapsed cage system after it was installed constitute damages suffered by plaintiff beyond the value of the product that was the subject of the contract. And the Court is not persuaded by the court's logic in _Secura Ins. v. Super Prods. LLC_, 933 N.W.2d 161, 165 (Wis. Ct. App. 2019), that cleanup costs are akin to replacement of the product itself. They are not here. In _Secura_, the cleanup costs appears to have consisted of the product itself. Here, the cleanup costs involved, among other things, accessing the building by tearing

9

holes in it to get to the product, costs that are not akin to replacement of the product itself. Further, unlike in *Secura*, the product defendant provided to plaintiff under the contract was a pile of parts—the cage system uninstalled. What collapsed was the cage system after plaintiff paid another company to erect it.

Having rejected defendant's theory that plaintiff cannot recover damages for business interruption and demolition and cleanup costs, defendant's argument that evidence pertaining to those matters is irrelevant, will result in undue delay, and unfair prejudice falls flat.

Thus, the Court **denies** defendant's first motion in limine.

## II. PLAINTIFF'S MOTION IN LIMINE

Plaintiff seeks a pretrial order barring a dozen categories of evidence. The Court will address each in turn.

### A. Reference to Insurance

Plaintiff seeks an order barring any reference to the existence of insurance, under Federal Rule of Evidence 411, to prevent juror bias and prejudice. (Doc. 126, at 1, 3). Defendant concedes that evidence of insurance is inadmissible under Rule 411, but argues that plaintiff's motion is too broad to the extent it seeks to bar any reference to insurance because one of plaintiff's experts, Powell, is an adjuster for an insurance company. (Doc. 131, at 5). Defendant states that prior to Powell's retention as an expert, he adjusted the insurance claim arising from the collapse of the poultry cage here. (*Id.*). Defendant further argues that Powell's employment "goes directly to his credibility as a witness in this case—both his potential bias, and his interest in the outcome." (*Id.*, at 6).

Rule 411 provides:

Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose,

such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Fed. R. Evid. 411. The purpose of this rule is that whether a party was insurance has little probative value in determining whether the party acted negligently and jurors may use the knowledge of insurance improperly in awarding damages. *See, e.g.*, *Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir. 1986) ("The reasoning behind this rule with regard to testimony or argument concerning the defendant's insurance or indemnity protection is that it will result in an unduly generous award of damages by the jury."); *Charter v. Chleborad*, 551 F.2d 246, 248 (8th Cir. 1977) (noting that Rule 411 "has its basis in the belief that such evidence is of questionable probative value or relevance and is often prejudicial"). But Rule 411 provides an exception when the connection to insurance may go to a witness's bias. *See Charter*, 551 F.2d at 248-49 (admitting evidence of insurance to show bias of defense witness).

Here, the Court finds that Powell's status as an insurance adjuster who adjusted the claim in this case is relevant for the jury to assess the credibility of his testimony and weigh the objectivity of his opinion. It stands to reason that a person would tend to be influenced in reaching a later opinion—as an expert in this case—by an earlier opinion—as an adjuster in this case—even in the face of contrary evidence unknown to the person at the time of the first opinion. In other words, jurors may reasonably view Powell's testimony differently (knowing that he adjusted the claim in this case and now is rendering an opinion as an expert that is consistent with the manner in which he adjusted the claim) than they would if they believed Powell was simply an expert hired to render an objective opinion. Rule 411 contemplates just such a situation when the fact of insurance coverage may be relevant to jurors in assessing credibility and bias of witnesses. It does not mean that the jurors would necessarily discredit or reject Powell's opinion because of his

11

involvement in adjusting the claim, but jurors cannot intelligently assess the weight to give his opinion if they remain ignorant of the connection.

What Rule 411 bars is using insurance coverage evidence for the purpose of showing a person acted negligently or wrongfully. Defendant does not intend, and will not be allowed, to use the evidence in that way. Indeed, the Court will bar defendant from inquiring into any details about the nature or amount of coverage or insurance payout or the like. But the Court will allow cross examination of Powell about his employment as an insurance adjuster on the claim made in this case to the extent it informs the jury of a potential bias.

At oral argument on the motions in limine, plaintiff requested the Court issue some form of jury instruction informing jurors that insurance coverage by either party is not at issue in this case. The Court is willing to consider instructing the jury on this issue and the parties may propose language in their joint proposed jury instructions.

Thus, plaintiff's motion in limine is **granted-in-part and denied-in-part** on this ground.

### B. *Conditions of the Barns and Belts in Other Barns*

Plaintiff seeks a pretrial order barring admission of any evidence as to the conditions of the barns and belts except for Row 1 of Barn 17. (Doc. 126, at 3). Plaintiff reasons that since the collapse of Row 1 caused the domino-effect failure of the other rows, and since the cages in other barns did not collapse, the condition of those other rows and barns is irrelevant. (*Id.*). Plaintiff also seeks to limit evidence of the condition of Row 1 in Barn 17 to the seven days prior to the collapse, explaining that it had crews cleaning the manure in the week leading up to the collapse, so the condition of the row prior to that is irrelevant. (*Id.*, at 4). Plaintiff urges any evidence "outside of that timeframe would be used solely for the improper purpose of seeking emotional outrage

from the jury and therefore it must be excluded," citing Federal Rules of Evidence 401-403. (*Id.*).

Defendant resists this motion. Defendant emphasizes that its expert "opines that the System 'collapsed due to overload of the system with manure.'" (Doc. 131, at 7). Defendant argues that evidence "tending to show the System was overloaded with manure . . . is plainly relevant to this dispute." (*Id.*, at 8). Defendant argues that the conditions in the other rows and barns are probative of the condition of Row 1 of Barn 17 prior to the collapse. (*Id.*). Defendant states there is significant evidence that removal of manure from the barns was a serious and constant concern of the operation. (*Id.*, at 9-12). Defendant further points out that the conditions in the other barns is relevant to causation because none of the cage systems were installed with the self-tapping screws, yet only the cage system in Barn 17 collapsed, begging the question about what condition was different in Barn 17 than in all the other barns. (*Id.*, at 12-13). Defendant also argues that the condition in the other barns is relevant to show plaintiff's "operational and maintenance practices, or lack thereof." (*Id.*, at 13).

Evidence is relevant, under the Federal Rules of Evidence, if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. In other words, the question under Rule 401 is not how probative the evidence is. Rather, if it has any probative value whatsoever—any tendency—it is relevant. Thus, Rule 402 which bars irrelevant evidence poses a low hurdle to the admissibility of evidence. *See, e.g.*, *Farm Credit Servs. of Am., FLCA v. Tifft*, 8:18-CV-80, 2020 WL 791042, at *2 (D. Neb. Feb. 18, 2020) (noting that Rule 401 sets a "very low bar" for admissibility); *Marvin Lumber & Cedar Co. v. Sapa Extrusions, Inc.*, Civ. No. 10–3881 (RHK/LIB), 2013 WL 1687700, at *1 (D. Minn. Apr. 18, 2013) (noting that "Federal Rule of Evidence 401—deeming evidence relevant if it has 'any tendency to make a fact more or less probable' (emphasis added)—sets an

13

extremely low bar" for admissibility). Under Rule 403, the probative value of relevant evidence must be balanced against other considerations, such as the "danger of" "unfair prejudice" and "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, the conditions in other rows of the cage system and in other barns is relevant because the conditions in those other locations has a tendency to inform jurors as to the conditions present in the collapsed cage system that was part of the same operation.[3] It is relevant to help jurors understand how the manure accumulated and affected the operation of the systems and the efforts made to deal with the problem. It is also relevant to help jurors arrive at a conclusion as to causation. Plaintiff alleges the cage system collapsed because it was improperly installed, yet all the cage systems in all the other barns were installed in the same manner, begging the question why they did not similarly fail if faulty installation was the cause. Thus, the Court finds the evidence passes the low hurdle of relevance under Rules 401 and 402.

The Court is also persuaded that the danger of unfair prejudice and cumulative evidence does not substantially outweigh the probative value of this evidence. The burden under Rule 403 is upon the opponent of relevant evidence to show not just that there is a danger of some other concern, such as unfair prejudice, but that the danger "substantially outweighs" the probative value of relevant evidence. Here, plaintiff has identified a possible danger of unfair prejudice that could arise from a focus on conditions in other barns that arguably could be different from the conditions in Barn 17. But plaintiff did not proffer evidence that there was a material difference in the condition of Barn 17 from any of the other barns. To the extent there are differences or explanations for why the

---

[3] The Court notes that plaintiff's expert Childress emphasized that he reached his opinion only after inspecting not just Barn 17, but other barns as well to compare their construction and installation. (Doc. 136-1, at 2-3). That plaintiff's expert found the conditions in other barns relevant to form his opinion reinforces the conclusion that the conditions in other barns is relevant for the jury to reach a decision about the cause of the collapse.

14

conditions in other barns may not be representative of the condition in Barn 17, that can be the subject of cross examination or affirmative evidence presented by plaintiff.

Plaintiff also argues that any evidence as to the condition of Row 1 in Barn 17 should be limited to the seven days prior to the collapse because employees had begun scraping manure off the belts in that time frame. (Doc. 126, at 4). For the reasons already stated, the Court finds the conditions at the facility generally are probative of whether the manure had anything to do with the collapse. To the extent that there were changes made to Row 1 in the week preceding the collapse, plaintiff can present that evidence as well and the jury can weigh the impact of that evidence.

Plaintiff also urges "the court should also exclude any testimony relating to the number of nonworking belts in Barn 17 and any testimony regarding the smell of ammonia in the barn," arguing such evidence is irrelevant. (*Id.*). Plaintiff argues that it is not unusual to smell ammonia in populated livestock barns. (*Id.*). The Court rejects plaintiff's request. Again, the general condition of the facility, including whether the belts were in operating order, is relevant and probative as to whether the manure had anything to do with the collapse of the cage system. As for the smell of ammonia, the probative value may be slight, given that all such barns would smell of ammonia according to plaintiff, but the danger of unfair prejudice is non-existent for the same reason.

In short, none of this evidence here is unfairly prejudicial. Relevant evidence is always prejudicial to one side or the other, or else it is arguably not relevant. *See, e.g.*, *United States v. Johnson*, 934 F.2d 936, 942 (8th Cir. 1991) (stating that "relevant evidence is inherently prejudicial"); *United States v. Zimmerman*, 832 F.2d 454, 458 (8th Cir. 1987) ("Relevant evidence is inherently prejudicial"); *Midwest Direct Logistics, Inc. v. Twin City Tanning Waterloo, LLC*, No. 15-CV-2013-LRR, 2016 WL 4467913, at *6

(N.D. Iowa Aug. 23, 2016) (noting that all relevant evidence is prejudicial to some degree). The question is whether it is unfairly prejudicial.

Here, defendant's theory is that the weight of the manure caused the collapse of the cage system. Plaintiff would have the Court bar the jury from knowing almost anything about the facility and how it was operated and maintained—information that may help them determine whether manure had anything to do with the collapse—and instead allow the jury to hear only evidence that supports its theory of what caused the collapse. Defendant is permitted to present evidence that could support its theory of why the cage system collapsed. The amount of manure present within the collapsed cage system will be difficult to determine because it collapsed, so the amount present in other rows and other buildings can be informative, as will the extent to which the manure was controlled within the facility. There is nothing particularly visceral or emotional about manure that would cause jurors to ignore the facts and find against plaintiff regardless of the merits of the dispute. In short, the Court does not find that this evidence will be unfairly prejudicial.

Thus, the Court **denies** plaintiff's motion in limine on this ground.

### C.    *Cumulative Evidence of Amount of Manure in Barn 17*

Plaintiff seeks a pretrial order barring what it anticipates will be cumulative testimony from witnesses about the conditions in Barn 17. (Doc. 126, at 5). Plaintiff states that defendant "intends to call as many as 18 witnesses to testify as to the conditions in the barn prior to the collapse" and argues that such evidence is cumulative and may unfairly "magnify the relevance" of the evidence, and so should be barred under Rule 403. (*Id.*, at 5). Plaintiff again argues that the conditions in other rows and other barns is irrelevant and prejudicial and "would only serve to inflame the passions or prejudices of the jury as there is no evidence the conditions in the other barns [and rows within Barn 17] contributed to initiation of the loss." (*Id.*). Alternatively, plaintiff urges the Court

16

to "issue a cautionary instruction to the jury that the amount and weight of manure in the other barns and the amount and weight of manure in the other rows or on any of the other belts in Barn 17 is irrelevant and should not be considered evidence during the jury's deliberation." (*Id.*, n.2). Last, plaintiff "requests it be allowed a brief voir dire or cross [examination] of each witness outside the presence of the jury to ensure their testimony is relevant to the collapse and will not steer off into irrelevant and prejudicial topics." (*Id.*, at 6).

Defendant argues that this motion is premature because the Court cannot determine whether evidence is unfairly cumulative until it hears the evidence. (Doc. 131, at 15). At oral argument on the motions in limine, plaintiff conceded at the start of argument that some of its grounds were not ripe for adjudication at this time but thought it prudent to alert the Court through motions in limine about evidentiary issues in advance of trial.

The Court agrees with the parties that this ground is not ripe for adjudication pretrial. The Court cannot determine at this time whether testimony from witnesses as to the conditions in the barns will be needlessly cumulative, having not heard the evidence. Under Rule 403, relevant evidence can be barred if the danger of needlessly cumulative evidence substantially outweighs its probative value. The language of Rule 403 presupposes that trials necessarily involve cumulative evidence to some degree. The credibility of witnesses is often measured, for example, by the extent to which their testimony is consistent with the testimony of other witnesses. The question becomes whether the cumulative evidence is needed. At some point, it can reach a point when it is not needed. But the Court is in no position at this time to make that judgment call and will not do so blindly in advance of trial. If plaintiff believes at some point the testimony has become needlessly cumulative, counsel can object and the Court will rule on the objection at that time.

17

Also, the Court will not permit individual voir dire of each witness outside the presence of the jury before they are allowed to testify. This procedure would be unwieldly and waste a lot of the jurors' valuable time. Again, if plaintiff believes testimony is irrelevant or needlessly cumulative, it may object and the Court will rule on the objection.

Thus, the Court **holds in abeyance** plaintiff's motion in limine on this ground.

### D.   *Evidence or Lay Person Opinion as to Depth and Weight of Manure*

Plaintiff seeks a pretrial order barring lay opinion about the amount of manure in Barn 17 on the day of the collapse under Rule 701. (Doc. 126, at 6-9). Plaintiff claims such testimony will lack foundation and invade the province of the jury. (*Id.*, at 7). Plaintiff argues that there is no evidence any of the potential witnesses weighed or measured the manure and would have no basis to determine whether it had anything to do with the collapse. (*Id.*). Alternatively, plaintiff urges the Court that such testimony would also be inadmissible under Rule 702. (*Id.*, at 9).

Defendant resists, arguing that plaintiff has not identified the witnesses, other than Mark Fiedler, and has failed to explain why a witness would lack personal knowledge about the amount of manure present. (Doc. 131, at 16-18). Defendant reiterates that the amount of manure in the barns is highly probative and layperson observations about the manure is relevant. (*Id.*, at 17). Defendant urges that if plaintiff believes a witness's testimony is inadmissible for lack of personal knowledge, then plaintiff can object at trial. (*Id.* & n.9). As for Mr. Fiedler, defendant states it will not seek an opinion from him about whether the weight of the manure caused the collapse, but asserts that Fiedler should be able to testify about his observations about the amount of manure. (*Id.*, at 17-18).

Rule 701 of the Federal Rules of Evidence provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The Eighth Circuit Court of Appeals has explained that Rule 701 has been interpreted expansively so as to permit the admission of an opinion, "if it is based on relevant historical or narrative facts that the witness has perceived, and if it would help the factfinder determine a matter in issue." *United States v. Oliver*, 908 F.2d 260, 263 (8th Cir. 1990) (internal quotations and citation omitted). "The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995). As such, lay witness opinion is an acceptable "short-hand rendition" of a conglomeration of facts which, otherwise, could not "be described in sufficient detail to adequately convey to the jury the substance of the testimony." *Wactor v. Spartan Transp. Corp.*, 27 F.3d 347, 350–51 (8th Cir. 1994) (quoting *Kreuger v. State Farm Mut. Auto. Ins. Co.*, 707 F.2d 312, 317 (8th Cir. 1983)).

Here, plaintiff would have the Court bar unidentified witnesses from describing what they observed as to the amount of manure in the barns absent evidence they weighed or measured the manure. The Court will not do so. Weight and height are prime

examples of matters upon which lay opinion is admissible. One need not have measured a man's height to render a lay opinion based on observation that the man was about six foot tall. Similarly, witnesses in this case need not have weighed or measured the manure to be able to render an opinion based on their personal observations as to the amount of manure present. And this testimony will help the jury understand the conditions in the barns and whether manure had anything to do with the cause of collapse. The same holds true for testimony from Mr. Fiedler.

Of course, a lay "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. So, defendant will need to lay the foundation of personal knowledge by witnesses before eliciting testimony on the amount of manure present. If plaintiff believes that a particular witness lacks personal knowledge based on personal observation, plaintiff may object and the Court will rule on the objection at that time. But the Court will not issue a pretrial ruling simply stating that it will enforce the rules of evidence.

Defendant does not resist, and the Court grants, plaintiff's motion to the extent it seeks a ruling barring lay witnesses, including Mr. Fiedler, from opining that the amount of manure caused the collapse of the cage system.

Thus, the Court **grants-in-part and denies-in-part** plaintiff's motion in limine on this ground.

### E. *Evidence or Expert Testimony About Samples of Manure From Barn 17*

Plaintiff seeks a pretrial order barring evidence about samples of manure "improperly" collected on April 6, 2020 (51 days after the collapse). (Doc. 126, at 9-11). Plaintiff argues "such evidence is scientifically unreliable, misleading, confusing, prejudicial and lacks foundation," citing Federal Rules of Evidence 401-403 and 702. (*Id.*, at 9). Plaintiff explains that the barn was open to the elements at the time of the

collection and the moisture would have increased "the swelling of the manure." (*Id.*, at 10). Plaintiff also argues the collection was "not appropriate and did not conform with industry standards." (*Id.*). Plaintiff further asserts the evidence lacks foundation because defendant's expert, BakerRisk, did not perform the collection, citing Federal Rule of Evidence 602. (*Id.*, at 10-11).

Defendant resists, asserting that whether the manure was collected properly or whether the weather conditions affected the reliability of relying on the collection data goes to the weight, not the admissibility of the expert's opinion in relying on the data. (Doc. 131, at 18-19). Defendant also points out that an expert need not rely only on personal knowledge, under Rule 602, but may also rely on facts or data "the expert has been made aware of." (*Id.*, at 19).

Here, the Court finds the evidence admissible. There may be facts which call into question the accuracy of the measurements, given the change in conditions, and to the extent to which an expert should rely on the data given those circumstances. That does not, however, make the evidence or data itself inadmissible. "An expert's opinions are not inadmissible simply because an underlying assumption may be contestable." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 615 (8th Cir. 2011). "As a rule, questions regarding the factual underpinnings of the expert's opinion affect the weight and credibility of her testimony, not its admissibility." *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 997-98 (8th Cir. 2008). A witness who claims to have seen a suspect rob a bank is not barred from testifying simply because the lighting conditions were poor at the time. Questions about conditions of observation are the quintessential subject for cross examination. That plaintiff's expert unsurprisingly is critical of defendant's expert's reliance on the data does not render it any less admissible. It will be for the jury to decide whether, given the change in conditions, defendant's expert's opinion, relying on the data, should be credited. "If a factfinder doubts [an expert's]

21

assumptions, then the factfinder will discount his ultimate conclusions or rely on his alternate calculations which account for different [factual assumptions]." *In re Zurn*, 644 F.3d at 615.

Last, defendant is correct. Expert witnesses are not bound by Rule 602's limitation on testimony being based on personal knowledge. "Under Federal Rule of Evidence 703, 'an expert may rely on otherwise inadmissible hearsay in forming [his or her] opinion if the facts and data upon which [he or she] relies are of a type reasonably relied upon by experts in the field.'" *Structural Polymer Grp.*, 543 F.3d at 997 (quoting *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997)); *United States v. Carter*, 270 F.3d 731, 735 (8th Cir. 2001) ( "Rule 703 of the Federal Rules of Evidence permits experts to rely upon inadmissible facts or data in forming opinions or inferences, if of a type reasonably relied upon by experts in a particular field.").

Thus, the Court **denies** plaintiff's motion in limine on this ground.

### F. *OSHA Investigation Evidence*

Plaintiff seeks a pretrial order barring evidence "pertaining to the OSHA investigation, the OSHA file, or OSHA's withdrawn citations." (Doc. 126, at 11). Plaintiff argues that the evidence is irrelevant and should be barred under Federal Rules of Evidence 401 & 402. (*Id.*). Plaintiff also complains that "the OSHA file includes a number of interviews with [plaintiff's and L&K's] employees regarding the conditions in the barn and the 'assumed' cause of the collapse." (*Id.*). Plaintiff argues all these statements "are irrelevant and misleading as discussed in the sections above." (*Id.*). Last, plaintiff argues the statements constitute inadmissible hearsay. (*Id.*).

Defendant replies that it does not intend to offer any evidence of OSHA citations and agrees such evidence should be excluded from trial. (Doc. 131, at 20). As for the OSHA report and the statements therein, defendant argues that it is premature for the Court to rule on it at this time because it is not clear yet what evidence from the report

will be offered and whether it will be admissible and relevant. (*Id.*). Defendant also argues that plaintiff's motion is too broad and vague and, in particular, argues that OSHA investigator Fiedler's observations and photographs and other evidence obtained during the OSHA investigation are relevant and admissible. (*Id.*, at 21).

At oral argument on the motions in limine, the Court inquired of the parties whether they knew if OSHA investigators respond to collapses of equipment in buildings where employees work regardless of injury or death, or whether they respond and investigate only when employees are injured or killed. Neither party knew the answer to this question and had not questioned the OSHA investigator about it.

To the extent that both sides agree that the withdrawn OSHA citations are irrelevant and should stay out of evidence, the Court **grants** plaintiff's motion in limine.

As to the rest of the evidence, the Court agrees with defendant that plaintiff's motion is both premature and overbroad, as worded. The Court suspects that OSHA investigators routinely respond to collapses like this regardless of whether an employee was injured or killed because it could affect the safety of the workplace. In any event, if the parties and the Court do not know the answer to this question, it is unlikely jurors would. Thus, the mere mention of the OSHA investigation or the identity of a witness as an OSHA investigator is probative and highly unlikely to be unfairly prejudicial. In any event, as previously noted, Mr. Fiedler may testify as to his observations of the conditions and, to the extent he took photographs or obtained other evidence in the course of his investigation, that evidence may also be admissible assuming a proper foundation is laid. The Court **holds in abeyance** the question of whether Mr. Fiedler can be identified as an OSHA investigator.

Plaintiff's hearsay objection has some traction with the Court, but it is premature for the Court to rule on that objection at this time. The statements derived from interviews contained in the OSHA report are hearsay statements. Hearsay "means a

statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c) (internal emphasis omitted). Thus, the OSHA report itself is hearsay, and it appears to contain further hearsay. *See, e.g.*, *Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, No. 13-CV-4106-CJW, 2017 WL 752282, at *9 (N.D. Iowa Feb. 27, 2017) (finding an expert's report was hearsay); *United States v. Lasley*, No. 14–CR–45–LRR, 2014 WL 6775539, at *6 (N.D. Iowa Dec. 2, 2014) (finding an expert's written report is hearsay and not admissible under the residual exception). *See also Devorak v. United States*, Civ. No. 01–1415 (RHK/AJB), 2002 WL 34715899, at *2 (D. Minn. Oct. 30, 2002) (barring admission of written expert report as hearsay); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 342 (D. Kan. 1999) (stating that an expert's written report is generally inadmissible); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) ("Rule 702 permits the admission of expert opinion testimony not opinions contained in documents prepared out of court.").

In short, the Court is highly unlikely to allow any OSHA report in to evidence, let alone any further hearsay statements within that hearsay, absent a showing that the report or those statements satisfy some exemption from or exception to the hearsay rules. At this time, however, the Court cannot rule. Plaintiff has not identified specific statements it seeks to bar and defendant has not identified statements it seeks to admit. Thus, the Court will hold in abeyance plaintiff's motion in limine as to the OSHA report.

Thus, the Court **grants-in-part and holds in abeyance-in-part** plaintiff's motion in limine on this ground.

### G.    *Conditions in the Barns and Mistreatment of Birds*

Plaintiff seeks a pretrial order barring evidence "about conditions in the barns or claimed mistreatment of the birds." (Doc. 126, at 11-13). More specifically, plaintiff asks the Court to "exclude inflammatory statements regarding the conditions in the barns

24

and the treatment and ultimate death of the birds due to the collapse or the need to euthanize them." (*Id.*, at 11). Plaintiff argues that evidence is irrelevant and would be "extremely prejudicial under Federal Rule of Evidence 403." (*Id.*). Plaintiff points out that treatment of birds in large processing farms is a "hotly debated" issue nationwide. (*Id.*, at 12). Plaintiff argues "[t]he only purpose for proffering evidence relating to the treatment and living conditions of the chickens would be to vilify plaintiff in front of the jury." (*Id.*).

Defendant replies that it "will not argue or present evidence affirmatively stating that the incident birds were 'mistreated,' nor make any reference to or characterize [plaintiff] as 'cruel' or 'inhumane' as it relates to its treatment [of] these animals." (Doc. 131, at 21-22). Defendant resists plaintiff's motion, however, to the extent that it seeks broadly to bar any evidence about the conditions in the barns, re-emphasizing that the conditions in the barns include the amount of manure and how that might have affected the stability of the caging system. (*Id.*, at 22). Defendant states "the ammonia level from the accumulated manure was so high that i[t] caused some of the birds to go blind." (*Id.*).

Here, plaintiff's motion is overly broad. As the Court has already noted, the condition of the barns is relevant and probative of the question of whether the cage system collapsed because of the weight of manure. So asking the Court to bar any evidence relating to the condition of the barns is a bridge too far.

On the other hand, whether plaintiff properly treated poultry is not relevant or probative, as defendant recognizes. The Court understands that leaving poultry to founder in excessive amounts of manure could arguably be deemed mistreatment, and in that sense there is some linkage between the issue about the quantity of manure and the alleged foul treatment of the fowl. Thus, evidence, including photographs, about the level and amount of manure will be admissible even if it reflects a less-than-pleasant

environment for poultry. On the other hand, the probative connection between the smell of ammonia and weight of manure is weak and the danger of unfair prejudice is strong. Likewise, the probative value of whether birds went blind from the level of ammonia is even more tangentially related to the weight of the manure. Thus, the Court grants plaintiff's motion to the extent that it seeks to bar any evidence or argument about the smell of the manure or barns generally and evidence that birds allegedly went blind from the ammonia. Likewise, defendant concedes that it will not offer evidence or argument about whether plaintiff improperly cared for the poultry. Accordingly, although defendant may present evidence about the quantity of manure in the barns (which encompasses whether the manure affected the stability of the cage system), defendant may not present evidence or argument about what, if any, adverse impact the quantity of manure had on the poultry's living conditions, the smell, or the blinding of birds.

Thus, the Court **grants-in-part and denies-in-part** plaintiff's motion in limine on this ground.

### H. *Evidence About Whether Self-Tapping Screws Were Necessary*

Plaintiff seeks a pretrial order finding that defendant is "estopped from any attempt to offer evidence or testimony that the top two metal self-tapping screws for the knuckle brackets were unnecessary or did not contribute to the cages' stability as such assertions contradict Defendant's previous actions and what has been established as true." (Doc. 126, at 13-14). Plaintiff argues that defendant designed the system to have these screws and plaintiff's experts have opined they were necessary for structural integrity of the system. (*Id.*, at 13). Plaintiff points out that after the collapse, it ordered thousands of metal screws to replace the missing screws it already paid for and defendant never replied that the screws were unnecessary. (*Id.*).

Defendant resists, asserting that plaintiff wants the Court to assume that plaintiff's theory is correct, but defendant contests the facts supporting that theory. (Doc. 131, at

26

22-23). Defendant argues that whether the instruction manual called for the self-tapping screws, what the model shows, whether they were necessary, and what effect any change order had are all facts that are in dispute and must be resolved at trial. (*Id.*, at 23). At oral argument on the motions in limine, defense counsel conceded that there is no question that the instructions called for installation of these screws, but that is not the same as saying the absence of the screws caused the collapse. Defendant points out that the cage systems in all the other barns similarly lacked screws, but none collapsed.

Estoppel is not a basis for seeking a Court's pretrial ruling on the admissibility of evidence. Rather, plaintiff's estoppel argument is one properly made in a motion for summary judgment, not in a motion in limine. As previously noted, proper motions in limine are tied directly to the Federal Rules of Evidence. Plaintiff references no rule of evidence in this portion of its motion.[4]

Regardless, the Court finds whether defendant's position—either in its manual, change orders, or fulfilling an order for more screws—reflects an acknowledgement that missing screws were necessary for the structural integrity of the cage system is a question of fact for the jury. Plaintiff is free to, and surely will, point all these things out to the jury in asserting that defendant itself recognized the screws were necessary for structural integrity. But defendant is also free to dispute these facts, to assert that even if the instructions called for screws, those screws were not necessary for structural integrity, and to argue that even if the screws were necessary for some degree of structural integrity, the missing screws did not cause or contribute to the collapse.

Thus, the Court **denies** plaintiff's motion in limine on this ground.

---

[4] To be sure, in a footnote plaintiff cites to the hearsay rule, but as to the admissibility of the duplicate billing and revenue defendant received, not as to its argument that defendant should be estopped from arguing the screws were unnecessary. (Doc. 126, at 13 n.12).

27

## I.       Photos and Depictions of Collapse

Plaintiff seeks a pretrial order barring "[a]ny photographs, videos or other depictions of the collapse that were not taken directly after the loss as they do not depict the conditions at the time of the collapse." (Doc. 126, at 14). Plaintiff argues that any such evidence would be "irrelevant, misleading and prejudicial unless a proper foundation can be laid as to who took the photographs, when, where, and under what conditions or limitations." (*Id.*). Plaintiff goes on to explain that photos taken later would show "deterioration due to exposure to rain, snow, ice and decomposing chicken carcasses." (*Id.*).

Defendant argues the Court cannot grant this motion when plaintiff has not presented any of the evidence it seeks to exclude. (Doc. 131, at 24). Defendant also argues that the fact photos were taken at a later time does not mean they are irrelevant. (*Id.*). Defendant argues plaintiff's motion is too broad as well, noting that defendant's representatives were not allowed inside the facility in the days following the collapse. (*Id.*).

The Court begins its analysis with the understanding that under the Federal Rules of Evidence, authentication or identification as a condition precedent to admissibility is satisfied by "evidence sufficient to support a finding that the [matter in question] is what the proponent claims it is." Fed. R. Evid. 901(a). "To meet this standard, the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be." *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993) (citation omitted). For photographs to be admissible, they "must be shown to be an accurate representation of the thing depicted as it appeared at the relevant time." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 569 (8th Cir. 2009). In *Schmidt*, the Eighth Circuit Court of Appeals held that, where a proffered photograph was taken after the incident at issue by a person with no personal knowledge of whether it was an accurate representation of

28

what was depicted at the relevant time, there was "no abuse of discretion in the district court's decision to strike the photographic exhibit for lack of foundation." *Id.* Foundation for a photograph can be laid by anyone familiar with the subject in the photograph at the time it was taken; it need not be laid by the photographer.

Here, defendant will be required to lay a foundation through testimony of a witness who can establish that the photograph or video accurately depicts the subject in the photograph or video at the time it was taken. The next question is whether it was taken during the relevant time, which implicates Rules 401 and 402. Again, the relevance rules pose a low barrier to admission; the evidence need only have any tendency to make a fact at issue more or less likely. That some photographs were taken later in time does not necessarily render them irrelevant. Of course, there may be differences in appearance of the buildings with the passage of time and weather conditions. That does not mean, however, that the photographs fail to capture information relevant for the jury's consideration. For example, twisted metal stanchions would presumably appear the same regardless of the passage of time or weather conditions. Without having the contested photographs before it, the Court is in no position to determine whether the passage of time and weather conditions rendered the photographs irrelevant or misleading in some way. Thus, the Court cannot grant plaintiff's motion in limine on this ground at this time.

The Court notes, however, that Rule 403 could be implicated by photographs that depict or focus on decomposing chicken carcasses. As the Court has noted, this case is not about how chickens were treated. Thus, the Court will be looking in particular to ensure that photos and videos do not overemphasize the condition of the chickens. Some passing depiction may be necessary or inevitable, but undue emphasis on such depictions may cross the line under Rule 403. Again, however, the Court is in no position to rule

on the admissibility of any particular photograph or video because none has been presented to the Court for review.

Thus, the Court **holds in abeyance** plaintiff's motion in limine on this ground.

### J.    *Evidence/Argument that Plaintiff was General Contractor*

Plaintiff seeks a pretrial order barring evidence "implying/inferring that [plaintiff] was to serve as general contractor or as the supervisor for the construction of the cage system." (Doc. 126, at 15). Plaintiff argues it contracted with Stanley & Sons ("Stanley") to install the caging system and under the contract it never assumed responsibility of general contractor or supervisor of installation. (*Id.*). Rather, plaintiff maintains, it contracted with defendant to provide a supervisor to oversee the installation and any argument to the contrary "would be offered for the sole and improper purpose of confusing the issues and misleading the jury," citing Federal Rule of Evidence 403. (*Id.*).

Defendant resists, asserting that the evidence is to the contrary and that plaintiff's then-Vice President of Operations said plaintiff was acting as the general contractor. (Doc. 131, at 24-26). Defendant also insists that plaintiff's role in the construction of the cage system is a matter of factual dispute between the parties. (*Id.*, at 25). Defendant also disputes that it undertook responsibility over Stanley to supervise installation of the cage system; rather, it claims it was only responsible to "oversee delivery of the necessary component parts and materials, and to address any issues raised by [plaintiff] and Stanley during the installation process." (*Id.*).

At oral argument on the motions in limine, plaintiff emphasized that any testimony about plaintiff serving as general contractor related to the construction of the barns that contained the cage systems, not to the installation or construction of the cage systems themselves.

The Court is not going to determine in ruling on a motion in limine a key issue for the jury to decide: who had what responsibility for installation of the cage system. The parties point the fingers at each other and the jury will have to determine who was responsible, who undertook what responsibilities for what aspect of the installation. It appears there will be conflicting evidence about this issue. That is what juries are for. The Court will not here resolve the dispute in favor of one side or the other by limiting evidence defendant can present because plaintiff believes it conflicts with its interpretation of the evidence. The Court is confident that through questioning of witnesses, the jury will be able to determine whether plaintiff assumed the duty of general contractor only as to the construction of the buildings versus construction of the cage system.

Thus, the Court **denies** plaintiff's motion in limine on this ground.

### K.    *Evidence Not Produced During Discovery*

Plaintiff seeks a pretrial order barring offering evidence not produced during discovery. (Doc. 126, at 15-17). But plaintiff goes further under this ground than its heading implies to seek "an order simply admitting: (1) the written contract as an evidentiary exhibit when offered; and (2) disallowing any evidence offered to suggest the contract was invalid or that Defendant did not have a duty to exercise due care to supervise Stanley & Sons." (Doc. 126, at 16). Further, plaintiff seeks an order barring "any evidence to be offered by [defendant] that it met or complied with the duty to supervise the installation." (*Id.*). Plaintiff hinges this motion in part on discovery rules and in part on Rule 403, arguing it would be unfairly prejudiced by any such evidence because it would not be able to depose witnesses or conduct discovery on undisclosed evidence. (*Id.*, at 17).

Defendant resists, in part. (Doc. 131, at 26-30). Defendant does not resist admission of the relevant written contract between the parties. (*Id.*, at 26-27). Defendant also does not dispute that the contracts are valid and enforceable, but asserts that is

irrelevant because, defendant argues, this is a negligence case and not one for breach of contract. (*Id.*, at 27-28). Accordingly, defendant seeks to bar evidence and argument about the validity or enforceability of the contract. (*Id.*). Defendant states it will not present evidence or argument that it did not have a duty to plaintiff, as defined by the Court, but argues that it may present evidence as to its interpretation of the duty to supervise Stanley. (*Id.*, at 28-29). Defendant also resists plaintiff's motion to the extent it seeks to exclude evidence that defendant met or complied with the duty to supervise installation of the cage system. (*Id.*, at 29-30). Defendant argues this is another effort by plaintiff to seek summary judgment on the issue. (*Id.*). Last, defendant argues that plaintiff's broad request to bar any evidence not produced during discovery is vague and has no context that would allow the Court to rule on the motion at this time. (*Id.*, at 30).

To the extent plaintiff's motion broadly seeks an order barring evidence not produced in discovery, the Court denies the motion because defendant has not identified any such evidence and the Court cannot rule on a matter in the abstract.

To the extent plaintiff seeks to bar evidence or argument contesting the validity or enforceability of the contract, the motion is granted. Defendant is free to argue that it did not negligently carry out its duty under the contract to supervise the installation of the cage system, but it cannot contest that the contract included that duty.

Whether defendant carried out its duty to supervise installation is a question for the jury to decide. The evidence appears to show that the employee defendant sent to plaintiff did not believe he had a duty to supervise the installation of anything and did not do so. Thus, it is not entirely clear to the Court what evidence defendant intends to produce that shows its employee supervised the installation. But to the extent the contract is ambiguous about what the word supervise meant to the parties, that will be for the jury to decide. The jury may reach the decision in part based on the plain language of the

32

contract, but may also be informed by industry practice, expert testimony, and common sense.

Thus, the Court **grants-in-part and denies-in-part** plaintiff's motion in limine on this ground.

### III. *DEFENDANT'S MOTION IN LIMINE RE: CHILDRESS*

Defendant seeks a pretrial order barring plaintiff's expert, Childress, from offering opinions that (1) the cage system was defective in its manufacture, including its installation as a component of its manufacture; (2) the cage system was defective in its design; (3) that defendant's written instructions were inadequate; (4) that Stanley's installation of the cage system was improper and proper installation would have prevented the collapse; and (5) defendant's supervision of Stanley's installation was inadequate. (Doc. 136). Defendant argues that many of the requested limitations are "mandated by this Court's ruling granting summary judgment." (*Id.*, at 2). Defendant also argues that Childress is not qualified to render opinions as to whether: (1) Stanley's assembly of the cage system was improper; (2) proper installation would have prevented the collapse; (3) defendant's supervision of Stanley was improper; and (4) defendant's improper supervision caused errors in Stanley's installation. (*Id.*, at 3).

Plaintiff resists, arguing that although this case is not about manufacturing defects, defendant's manual instructions are relevant and admissible. (Doc. 150, at 5-8). Plaintiff agrees that it would not be proper for Childress to offer opinions that the cage system was defectively designed, that there was an alternative design, or that the design caused the collapse. (*Id.*, at 5). On the other hand, plaintiff argues that Childress is qualified and should be allowed to opine as to Stanley's installation, whether defendant's supervision of Stanley was adequate, and whether the improper installation caused the collapse. (*Id.*, at 8-20).

33

Here, the Court finds that Childress will not be allowed to opine that the cage system was designed or manufactured in a defective manner. To be sure, that does not preclude Childress from opining that the cage system was not installed as designed, or that the manner it was installed was inconsistent with its design. For example, Childress may opine that the feeder rail splices were improperly installed mid-span and that led to the collapse. He may also opine that the self-tapping screws were not installed as designed and the absence of the screws led to the collapse.

Likewise, the Court finds that Childress will not be allowed to opine that the installation instructions were defective or inadequate or that they led to the collapse. That does not mean, however, that Childress is prohibited from discussing the instructions. Plaintiff's theory is that defendant negligently supervised the installation of the cage system. To the extent the instructions were incomplete or inconsistent or unclear, it bears on the question of what degree of supervision was required over the installation. The more complex a system, the more complex the installation instructions, arguably the more important it is that the installation have some supervision by a person with knowledge of the system and the instructions to guide those, like Stanley, without such knowledge. That is not the same as saying the instructions were inadequate or led to the collapse; it is saying that the instructions were such that it made supervision over installation that much more important.

Defendant pointed out in oral argument on the motions in limine that Childress never expressed an opinion that the problems with the instructions impacted the significance of appropriate supervision in the installation. Defendant argues that Childress did not provide an opinion about standards for proper supervision of cage installation and, in particular, expressed no opinion about how supervision duties relate to adequacy of instructions.

34

To the extent that Childress attempts to express an opinion not disclosed in his expert opinions, the Court will sustain defendant's objections at trial. Nevertheless, that does not mean that Childress cannot discuss the instructions and note where they were inconsistent or vague. Childress' report notes that "[t]he lack of fasteners being installed may be due to the vagueness of the quantity of fasteners required within [defendant's] Instruction Manual." (Doc. 136-1, at 3). His report does not expressly opine, however, that the vagueness of the instructions called for greater supervision of installation. Common sense would suggest that when instructions are problematic, proper installation would be rendered more difficult. It would logically follow that better supervision of installation would be called for. Thus, though Childress may not be permitted to express an opinion about the need for greater supervision because the instructions had some problems, that does not mean plaintiff's counsel cannot ask the jury to reach the same common sense conclusion during closing argument.

Childress may opine that Stanley's installation of the cage system was improper and proper installation would have prevented the collapse. That is the essence of his report, based on his knowledge as a structural engineer and his investigation showing that the cage system was not installed as designed. Because Stanley installed the cage system, it follows that Stanley's installation was improper, according to Childress. Whether the improper installation led to the collapse is an opinion Childress reached based on engineering principles, the methodology of which defendant has not challenged.

Childress may opine as to whether defendant's supervision of Stanley's installation was adequate. Childress has experience supervising installations of structures and is qualified to render such an opinion. Further, he disclosed his opinion that "the lack of supervision by [defendant], as required based upon their contract with [plaintiff], on the installed caging system allowed for these deficiencies to occur which had a direct impact on the long-term performance of the caging system and eventual collapse." (*Id.*, at 7).

35

Thus, the Court **grants-in-part and denies-in-part** defendant's motion in limine as to Childress' testimony.

## IV.    DEFENDANT'S MOTION IN LIMINE RE: POWELL

Defendant seeks a pretrial order barring plaintiff's expert, Powell, from testifying as to (1) the replacement and repair costs to property; (2) demolition and cleanup costs; and (3) "misc. PD costs." (Doc. 138). Defendant argues that plaintiff is allowed to recover replacement or repair costs, but not to exceed the value of the property immediately prior to the loss or damage. (*Id.*, at 3). Defendant argues that the pre-loss value of the property is a prerequisite to recovery. (*Id.*). Because Powell did not calculate the pre-loss value of the property, defendant reasons he should be barred from testifying about the replacement and repair costs. (*Id.*, at 3–4). Defendant reasons that testimony about replacement and repair costs would be irrelevant when plaintiff cannot recover damages for those costs. (*Id.*). As to demolition and cleanup costs, defendant argues that these categories of damages are unavailable to plaintiff because some of the costs constitute unrecoverable "subrogation costs" and litigation expenses connected to "evidence collection" and because the economic loss doctrine bars recovery of the demolition and cleanup of the cage system itself. (*Id.*, at 17-21). As for "misc. PD costs," defendant alleges that Powell should be barred from offering evidence or opining about them to the extent they are subrogation and litigation expenses or relate to replacement and repair of the subject property. (*Id.*, at 22).

Plaintiff resists, first arguing that it produced evidence in discovery sufficient to allow it to present evidence at trial about the pre-loss value of the property. (Doc. 151, at 7-11). Connected with this argument is the assertion that no market value can be attached to Barn 17 alone because it was not an independent structure and was integrated with the much larger complex. (*Id.*, at 11-13). Plaintiff maintains that it can establish the pre-loss value of the property though lay witnesses—officers and employees of the

company—and need not produce expert testimony through Powell or anyone else on the topic. (*Id.*, at 13-15). As for demolition and cleanup costs, plaintiff maintains the economic loss doctrine does not bar their recovery, emphasizing that plaintiff paid defendant for the cage system and its delivery, but not its installation. (*Id.*, at 15-17). As for other costs, plaintiff "concedes that litigation expenses are not recoverable as damages," but insists that "damages labeled as 'subrogation' . . . do not relate solely to evidence collection. (*Id.*, at 17-18). Plaintiff urges that it "may recover the costs incurred to: (1) assist with the euthanasia of 600,000 chickens; (2) install safety railing for inspections; (3) erect safety fencing; (4) provide health & safety supervision; and (5) perform structural stabilization to super barn 17/18." (*Id.*, at 18). Plaintiff also insists it can recover the miscellaneous costs it claims were "associated with bird removal and building repair." (*Id.*, at 18-19).

The Court has already ruled on plaintiff's ability to recover demolition and cleanup costs in response to plaintiff's motions in limine. That ruling applies with equal force here.

As for pre-loss value, the Court will permit plaintiff to present lay testimony about the pre-loss value of the property. Defendant's argument here is based on an alleged lack of disclosure of pre-loss value during discovery. The Court is persuaded that plaintiff identified witnesses with knowledge of the business and disclosed insurance information sufficient to comply with its obligations. Powell referred to the schedules of value in his report. Defendant never asked in an interrogatory for pre-loss value evidence. The interrogatory it did pose asked about damages. (Doc. 143, at 40). Plaintiff produced its schedule of property values, which includes the value of barns 17/18. (Doc. 151-1, at 102–106). Pre-loss value is not a damage category. It is a limitation on the amount of damages that can be recovered. Thus, plaintiff was not under an obligation in answering that interrogatory to disclose its evidence of pre-loss value of the property.

And the challenge here appears to be theoretical only. In other words, defendant is not alleging that the replacement costs exceed the pre-loss value of the property. It does not claim it has any such evidence. Rather, it seeks to bar evidence of replacement costs because it theoretically could exceed the pre-loss value of the property. If defendant had evidence that the replacement costs exceeded the pre-loss value, that would be another matter entirely.

In any event, plaintiff can present evidence on pre-loss value sufficient to show that the replacement costs do not exceed the pre-loss value. To that extent, then, Powell will be permitted to testify as to the replacement costs. Because Powell did not himself ever render an opinion as to pre-loss value, however, he will not be permitted to express such an opinion at trial. That does not mean, however, that plaintiff cannot present lay opinion or other evidence on pre-loss value. The Advisory Committee's notes to Federal Rule of Evidence 701 provide:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

Advisory Committee Notes to 2000 amendment to Fed. R. Evid. 701. *See also, e.g.*, *Hot Stuff Foods, LLC v. Hous. Cas. Co.*, 771 F.3d 1071, 1079 (8th Cir. 2014) ("[W]e will not reverse a district court for admitting testimony by a business owner or officer regarding lost profits when his 'experience in the business provided the foundation for all the specifics to which he testified.'" (quoting *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 837 (8th Cir. 2005))); *Allied Sys., Ltd. v. Teamsters Auto. Transp.*

38

*Chauffeurs*, 304 F.3d 785, 792 (8th Cir. 2002) (finding a business officer could render a lay opinion as to business value based on "particularized knowledge that the witness has by virtue of his or her position in the business"). Plaintiff may establish pre-loss value exceeds the replacement costs through lay opinion testimony or other evidence.

Thus, the Court **denies** defendant's motion in limine on this ground.

## V.    *DEFENDANT'S SECOND MOTION IN LIMINE*

In defendant's "Second" motion in limine, defendant seeks a pretrial order barring evidence on a score of grounds: (1) injury or death from the collapse; (2) other lawsuits or claims; (3) Stanley's non-party status and absence at trial; (4) non-appearance of witnesses at trial; (5) evidence inconsistent with this Court's summary judgment order; (6) asking witnesses about this Court's prior rulings; (7) commenting on this Court's prior rulings; (8) evidence that plaintiff's damages is measured by cost of replacement and repair; (9) evidence of the pre-incident value of the property; (10) argument that plaintiff is entitled to both replacement of lost poultry and lost profits; (11) lay opinion testimony as to matters outside their personal knowledge, cause of collapse, and the impact of Stanley's installation; (12) OSHA citations issued to plaintiff; (13) argument that the parties' written contracts are "valid" and "enforceable"; (14) argument that defendant should be "punished"; (15) evidence of defendant's financial condition; (16) direct appeals to jurors; (17) settlement offers; (18) evidence defendant is insured; (19) Powell's testimony; and (20) Childress' testimony. (Doc. 139). As for the last two grounds, defendant merely refers to its separately filed motions in limine on these topics (Docs. 138 and 136, respectively), which the Court has already addressed. The Court will therefore address the first 18 grounds below.

### A.    *Injury or Death*

Defendant seeks a pretrial order barring evidence of any injury or death resulting from the collapse of the cage system, in particular the death of an employee of a third-

party working for L&K Poultry Services ("L&K"). (Doc. 142, at 3–5). Defendant argues that such evidence is irrelevant and would be unfairly prejudicial, citing Federal Rules of Evidence 401-403. (*Id.*). Plaintiff does not resist this portion of defendant's motion in limine. (Doc. 153, at 9).

Thus, the Court **grants** defendant's motion in limine on this ground.

### B. Other Lawsuits or Claims

Defendant seeks a pretrial order barring evidence or comments about other lawsuits or claims against defendant or plaintiff, including any claims by the deceased employee of L&K and a prior suit against defendant by Hawkeye Pride Egg Farm. (Doc. 142, at 5–9). Plaintiff does not resist this portion of defendant's motion in limine. (Doc. 153, at 9).

Thus, the Court **grants** defendant's motion in limine on this ground.

### C. Stanley's Status as Non-Party and Non-Appearance

Defendant seeks a pretrial order limiting the "presentation of evidence, argument, suggestion, and comment relating to" Stanley and requests the Court instruct the jury as follows:

> Stanley & Sons is not a party to this litigation, and you did not hear testimony from any witnesses on behalf of Stanley & Sons. The fact that Stanley & Sons is not a party to this litigation, and that you did not hear testimony from any witnesses on behalf of Stanley & Sons is not the responsibility of either Rembrandt Enterprises or Tecno Poult[r]y, and you should not hold Stanley and Sons' absence at trial against either Party. However, the presence or absence of evidence may be considered whenever you decide whether something has been proved by the preponderance of the evidence, as set forth in Instruction No. __ regarding Burden of Proof.

(Doc. 142, at 9–10). Defendant argues that evidence neither party named Stanley as a party, that either could have, and their decision not to, is irrelevant and the danger of unfair prejudice, confusion of the issues, and misleading the jury substantially outweighs

40

any probative value the evidence would have, citing Federal Rules of Evidence 401 and 403. (*Id.*, at 10–11). Further, defendant argues that the Court should bar evidence that Stanley is no longer a going concern, is insolvent, or that its principal officer has been accused of unrelated criminal conduct, again citing Rules 401 and 403. (*Id.*, at 12–13). Last, defendant seeks an order barring evidence that either party could have called, failed to call, or was prevented from calling any Stanley employee as a witness, again relying on Rules 401-403. (*Id.*, at 13–14).

Plaintiff does not resist defendant's motion on this ground, but opposes defendant's proposed jury instruction asserting it misstates the law and a motion in limine is not the proper vehicle by which to address jury instructions. (Doc. 153, at 9-12). Plaintiff goes further, though, and seeks an order barring defendant "from arguing that it is a '*fact* that certain evidence may be unknown or sufficient [*sic*] given Stanley's absence from trial and the effect that absence may have on either Party's burden of proof on any particular issue.'" (*Id.*, at 11 (emphasis and alteration in original, quoting defendant's motion (Doc. 142, at 11))).

It is inevitable that the jury will hear much about Stanley and its installation of the cage system. The jurors will likely be highly curious why, when plaintiff's theory is that poor installation caused the collapse, plaintiff did not sue Stanley. The jurors will also likely be highly curious about why they did not hear from any of the people who actually installed the cage system. Be that as it may, the parties are correct that the fact neither party sued Stanley and why neither party called any Stanley witnesses is not relevant to what the jury needs to decide whether defendant is liable. Likewise, whether Stanley is a going concern, is insolvent, and its principal officer is under criminal investigation on an unrelated matter is irrelevant. To the extent any of this has any probative value whatsoever, the danger of unfair prejudice and confusing the jury substantially outweighs it. Thus, the Court **grants** this portion of defendant's motion in limine.

At oral argument on the motions in limine, the parties stated they believe they can reach an agreement as to how the Court should instruct the jury about Stanley or how the parties will otherwise present evidence about Stanley. The parties asked the Court not to rule on that matter pretrial. Accordingly, the Court will otherwise **hold in abeyance** its ruling about evidence concerning Stanley.

### D.    Non-Appearance of Potential Witnesses

Defendant seeks a pretrial order barring both parties "from presenting evidence, argument, suggestion, and comment attributing to the other Party the non-appearance of any witness at trial, but who equally available to both Parties—whether from Stanley & Sons or otherwise." (Doc. 142, at 14). Defendant relies on Federal Rule of Evidence 403. (*Id.*). Plaintiff does not resist defendant's motion in limine on this ground. (Doc. 153, at 12).

Thus, the Court **grants** defendant's motion in limine on this ground.

### E.    Evidence Inconsistent With Court's Summary Judgment Ruling

Defendant seeks a pretrial order barring "evidence, argument, suggestion, or comment (1) that the System was 'defective', (2) that it was improperly manufactured, designed, and that any instructions provided by [defendant] were 'defective' or inadequate, or (3) that the subject incident was caused by any product defect." (Doc. 142, at 15–19). Defendant goes on to drill down on this request to seek an order barring evidence and argument "(1) that the System was defective in its manufacture, (2) that the System's installation was part of its manufacture, and (3) that the subject incident was caused by a defect in the System's manufacture." (*Id.*, at 17). Then defendant seeks an order barring evidence and argument "(1) that the System was defective in design, (2) that the subject incident was caused by the System's design, and (3) that any alternative design was possible or preferable." (*Id.*, at 17–18). Last, defendant seeks an order barring evidence and argument "that any written instructions provided by [defendant] were

inadequate or improper, or that such instructions otherwise caused the subject incident." (*Id.*, at 18–19). Defendant bases this portion of the motion in limine on this Court's order granting summary judgment on all but plaintiff's negligence claim, along with Federal Rules of Evidence 401-403. (*Id.*, at 15–19).

Plaintiff agrees "that evidence inconsistent with the Court's prior rulings should be excluded," but argues that does not mean that plaintiff should be barred from alleging that the installation and assembly were "defective" and consequently the cage system was in a "defective" condition. (Doc. 153, at 12-14). Plaintiff asserts it will not contend the cage system was defectively designed or manufactured, or that the instructions were defective. (*Id.*, at 13).

At oral argument, defendant revised its motion to the extent that it does not object to the use of the word "defect" generally. Defendant has no problem with plaintiff describing the installation as defective. But defendant objects to describing the cage system, as installed, as defective.

The Court granted summary judgment in defendant's favor except for the negligence claim. It follows then that the Court **grants** defendant's motion to the extent plaintiff will be barred from offering evidence or arguing the cage system was designed or manufactured in a defective manner. Plaintiff concedes as much. Plaintiff also concedes that it does not allege that the installation instructions were defective. Thus, the Court **grants** defendant's motion to the extent it seeks an order barring plaintiff from alleging the cage system was designed or manufactured in a defective manner, or that the instructions were defective. But the Court **denies** defendant's motion in limine to the extent it seeks to bar the use of the word "defective" when referring to the installation of the cage system or its condition after it was allegedly installed incorrectly. Other words may suffice, such as erroneously or incorrectly, to describe the alleged faulty installation, but the Court will not dictate the wording counsel may use to describe plaintiff's claim.

43

Saying that the cage system, as installed, was defective because the installation was defective is not the same as saying the cage system design or product was defective. The Court is confident the jury will understand the distinction. The jury instructions will make it abundantly clear what issues the jury must resolve, and whether the design or manufacture or installation instructions were defective will not be among them.

Thus, the Court **grants-in-part and denies-in-part** defendant's motion in limine on this ground.

### F.      Testimony About Court's Prior Rulings

Defendant seeks a pretrial order barring plaintiff from questioning witnesses about the Court's prior rulings, arguing that witnesses' understanding of the Court's ruling is irrelevant and the danger of confusing the jury, wasting time, and unfair prejudice would substantially outweigh any probative value of such evidence. (Doc. 142, at 19–20). Plaintiff resists, arguing that "testimony on those rulings is certainly relevant, and admissible," arguing that if the Court grants defendant's motion in limine, plaintiff "would be unduly prejudiced as it would allow witnesses to give testimony that conflicts with the Court's prior ruling(s)" and thereby mislead and confuse the jury. (Doc. 153, at 14). Plaintiff argues that this Court's rulings are law of the case, and in particular it wants to question witnesses about this Court's finding that defendant had a duty to supervise with due care Stanley's installation of the cage system. (*Id.*, at 14-16).

The Court denied defendant's motion for summary judgment, viewing the facts as it must in the light most favorable to plaintiff, finding there was a genuine issue of material fact whether defendant carried out its duty to exercise due care in supervising the installation of the cage system. The Court will instruct the jury as to what defendant's duty was and the jury's job will be to determine whether the facts show that defendant negligently carried out its duty (and also whether its alleged failure to do so had anything to do with the collapse of the cage system). The Court's pretrial rulings and findings are

44

not relevant and are not to be referenced during the trial. *Ward v. Smith*, Civil No. 10-3398–CV–S–ODS, 2015 WL 1499053, at *5 (W.D. Mo. Apr. 1, 2015) (granting motion in limine to bar reference to the Court's prior rulings and findings under Rule 401). Further, were the jury to learn of the Court's prior rulings and findings, it could have an undue influence on the jury's assessment of the evidence. *See Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 898 F. Supp. 1334, 1345 (N.D. Iowa 1995) (granting a motion in limine under Rule 403 to bar reference to the Court's prior rulings out of concern that it could unduly influence the jury and unfairly prejudice the parties). It is not necessary in questioning a witness to reference the Court's rulings; reference can be made, if necessary, to the law the Court provides the jury in its instructions.

Thus, the Court **grants** defendant's motion in limine on this ground.

### G. *Argument About Court's Prior Rulings*

Defendant seeks a pretrial order barring counsel from referencing or characterizing the Court's rulings in front of the jury. (Doc. 142, at 20–21). Defendant argues that the Court's prior rulings are not evidence and the only reference to the law by counsel should be limited to the Court's jury instructions. (*Id.*, at 21). Plaintiff resists, arguing that it ought to be able to reference the Court's rulings as law of the case "to show that Defendant had a duty to supervise Stanley during installation of the caging system in order to prevent relitigation of an element that has already been established by this Court." (Doc. 153, at 16-18).

Consistent with the Court's ruling on the prior ground, the Court's rulings are not evidence and are not to be referenced during the trial. The Court will instruct the jurors as to the law in its jury instructions. Prior rulings and findings are not a proper subject for questioning witnesses.

Thus, the Court **grants** defendant's motion in limine on this ground.

### H. Evidence of Cost of Repair and Replacement

Defendant seeks a pretrial order barring evidence and argument that plaintiff's "property damage is measured by the cost of replacement and repair, as opposed to the pre-incident value of the property." (Doc. 142, at 21). Defendant argues that under Iowa law, the proper measure of damage "'is the fair and reasonable cost of replacement or repair, *but not to exceed the value of the property immediately prior to the loss or damage*.'" (*Id.*, at 21 (emphasis defendant's) (quoting *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 494 (Iowa 2000))). Defendant argues that plaintiff should be barred from presenting any evidence about the costs of replacement and repair unless and until it presents evidence of the pre-incident value of the property at issue. (*Id.*, at 23–24). Defendant argues that for plaintiff to present evidence or argument describing its costs of replacement and repairs as damages "would be a misstatement of the law, and should be precluded," citing Federal Rules of Evidence 401-403. (*Id.*, at 23).

Plaintiff resists, arguing that Iowa law provides that it produced sufficient evidence of the pre-loss value of the property during discovery by showing its property was insured for $50 million and by producing its schedule of property values that provided a detailed list of property values, including for barns 17/18 (each valued at about $5.7 million). (Doc. 153, at 18-20). Plaintiff argues that in determining the value of the property pre-loss, it encompasses the entire property worth $50 million. (*Id.*). Plaintiff asserts that its damage claim of about $6.1 million is less than the value of the entire property and less than the value of barns 17/18 (which plaintiff alleges were interconnected and constituted a "super barn" and were both damaged as a result of the cage collapse). (*Id.*). Alternatively, plaintiff argues that if the Court finds plaintiff's disclosures insufficient to establish pre-loss value, it either allow plaintiff to supplement its discovery disclosures, or find there is no separate market value for only part of the "super barn" constituting

Barn 17/18 and find that the restoration costs is the appropriate measure of damages. (*Id.*, at 20-24).

This is essentially the same issue defendant raised in its motion to bar Powell's testimony. The Court found that plaintiff sufficiently disclosed in discovery information from which the pre-loss value of the property could be discerned and the identity of witnesses with knowledge of pre-loss value. The Court's ruling there governs its ruling here. Plaintiff will be permitted to present lay opinion and other evidence of pre-loss value of the property.

Thus, the Court **denies** defendant's motion in limine on this ground.

## I.     *Evidence of Pre-incident Value of Property*

Defendant seeks a pretrial order barring plaintiff from presenting evidence as to the pre-incident value of the property. (Doc. 142, at 24–28). Defendant argues that plaintiff has not designated an expert to testify on this subject, nor identified any other witness to testify about it. (*Id.*, at 24–25). Defendant again argues that plaintiff has not produced any discovery responses establishing the pre-loss value of the property. (*Id.*, at 26–27). Defendant premises this argument not on the Federal Rules of Evidence, but on Federal Rule of Civil Procedure 37(c)(1), which allows a court to sanction by suppression of evidence discovery violations. (*Id.*, at 27–28).

Plaintiff resists, arguing that a property owner is competent to testify as to the value of property and expert testimony is unnecessary. (Doc. 153, at 24-25). Plaintiff also disputes defendant's assertion that it failed to disclose witnesses capable of testifying about the value of the property. (*Id.*, at 26).

Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a trial court can preclude a party that has failed to provide information or to supplement previously disclosed information in accordance with its discovery obligations from using undisclosed information at trial, unless the failure was substantially justified or harmless. *Wegener*

*v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). As the Court has already noted, generally speaking, expert testimony is not required to establish the value of a business. A lay witness with knowledge of the business operations may provide a lay opinion about such matters. *See, e.g.*, *Hot Stuff Foods*, 771 F.3d at 1079 (stating the court "will not reverse a district court for admitting testimony by a business owner or officer regarding lost profits when his experience in the business provided the foundation for all the specifics to which he testified.") (citations and internal quotation marks omitted); *Allied Sys.*, 304 F.3d at 792 (noting that lay opinion testimony of a business officer as to value or projected profits or as to damages to the business is admissible under Rule 701).

Here, plaintiff identified in discovery a number of officers and employees as having knowledge of plaintiff's claims, and in its expert disclosure plaintiff also identified Tim Gross and other employees as possibly providing expert testimony about plaintiff's damages. Plaintiff also produced a schedule of property values, including the values for barns 17/18. In short, defendant was placed on notice during discovery about plaintiff's damage claims and the identity of employees with knowledge of the business operations. The Court finds Rule 37 sanctions inappropriate.

Thus, the Court **denies** defendant's motion in limine on this ground.

### J.    *Argument as to Replacement of Lost Poultry and Lost Profits*

Defendant seeks a pretrial order barring evidence and argument that plaintiff is entitled to recover damages for both the replacement of its lost poultry and any profits lost by the inability of the lost poultry to generate revenue. (Doc. 142, at 28–30). Defendant argues that if plaintiff recovers both categories of damages, "it would be placed in a better position than it would otherwise have been had the subject incident never occurred." (*Id.*, at 28). Defendant reasons that the hens would have died at some point during the period when plaintiff claims lost profits from the birds, such that their value would have decreased to zero. (*Id.*, at 29). In other words, even if the collapse

had not occurred, plaintiff would have needed to replace the birds during this time period because of their natural life span. (*Id.*, at 30). Defendant argues that allowing plaintiff to seek these damages would "only serve to confuse the issues, mislead the jury, and result in unfair prejudice to [defendant]." (*Id.*).

Plaintiff resists, arguing that Iowa law provides that when "tangible property used to run a business is lost resulting in a business interruption a plaintiff is entitled to recover not only the value of the tangible property—in this case the hens—but also the usable value of the property during the time of replacement." (Doc. 153, at 27). Plaintiff argues that defendant's reasoning is "nonsensical" as any lost property has a useful life and a plaintiff is entitled to recover the value of the property at the time it was lost, taking into account how much useful life remained. (*Id.*, at 28-29).

"[I]n an action to recover for loss of livestock, a plaintiff cannot recover for the market value of the animals at the time they were destroyed and also recover for profits which would have been sustained in the sale of those same animals." *Mills*, 454 N.W.2d at 850 (citing *Miller v. Econ. Hog & Cattle Powder Co.*, 293 N.W. 4 (Iowa 1940)). But a plaintiff may recover both the market value of the animals at the time they were destroyed and "additional damages based on interruption in the production of additional" animals that would have been created by the lost animals "during the period of time reasonably required to replace the destroyed" animals. *Id.* at 851. In *Mills*, the plaintiff's farrowing hogs were lost to fire. The plaintiff was allowed to recover the value of the hogs at the time they were lost, but also the value of the additional litters the hogs would have produced during the time period had they not been killed.

Here, we have the loss of poultry which, while alive, laid eggs having economic value. If follows, then, that plaintiff is entitled to recover both the market value of the poultry at the time of loss—taking into account their expected useful life expectancy at the time—and additional damages equal to the value of the eggs the poultry would have

49

produced during the period of time reasonably required to replace them. To the extent defendant takes issue with the damage calculation and believes plaintiff's expert has erred in his calculations, that is the purpose of cross examination. That, jury instructions, and argument can address defendant's concerns that the evidence will confuse the issues or mislead the jury.

Thus, the Court **denies** defendant's motion in limine on this ground.

### K.     *Lay Opinion*

Defendant seeks a pretrial order barring plaintiff from presenting lay opinion testimony about "(1) technical aspects of the System for which they have no knowledge, (2) the reasons for the System's collapse, and (3) the impact of Stanley & Sons' allegedly improper installation of the System's integrity." (Doc. 142, at 30–34). Defendant anticipates plaintiff will ask lay witnesses "questions in order to solicit" "I don't know" answers "solely to draw the inference that [defendant] lacks understanding of its own product, and in particular certain critical factual issues in this case—*i.e.* the purpose of the self-tapping screws and whether such issues necessary for the System's stability, and the proper location of the feeder rail splices, and the effect different locations may have on the System's stability." (*Id.*, at 31). Defendant argues that, although such questions are appropriate during discovery, "[i]t would be improper and prejudicial for [plaintiff to] question these witnesses (and other lay witnesses) on these technical topics, the only purpose of which would be to draw the inference that [defendant] lacks understanding of its own product, and in particular certain critical factual issues in this case," citing Federal Rules of Evidence 403, 602, and 701. (*Id.*, at 33). Defendant argues the same is true as to seeking opinions about the reason for the System's collapse and the impact of Stanley's installation on the stability of the cage system. (*Id.*).

Plaintiff resists, asserting that defendant's lay witnesses' "lack of knowledge about the System and its improper installation is relevant as reasonably prudent people in their

50

position would have such knowledge." (Doc. 153, at 29-31). Plaintiff argues that Rule 701 allows lay witnesses to opine about technical matters "so long as the testimony is based on particularized knowledge that the witness has by virtue of his or her position in the business," citing the advisory committee's note to the 2000 amendment to Rule 701. (*Id.*, at 30). Plaintiff does not oppose defendant's motion to the extent it seeks an order barring lay witnesses from opining as to the reasons the cage system collapsed. (*Id.*, at 29 n.21). Plaintiff does not directly address defendant's argument that the Court should bar lay opinion about the impact of Stanley's installation on the stability of the cage system except in its concluding sentence asking the Court to overrule defendant's motion. (*Id.*, at 31).

Rule 602 of the Federal Rules of Evidence provides that "[a lay] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 701 of the Federal Rules of Evidence provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>> (a) rationally based on the witness's perception;
>> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"The [2000] amendment [was] not intended to affect the 'prototypical example[s] of the type of evidence contemplated by the adoption of Rule 701 relat[ing] to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." Advisory Committee Notes to 2000 Amendment to Rule 701 (last two alterations in original). The advisory committee notes gave an example of this, noting a business officer could provide a lay

opinion about the value of a business, based on personal knowledge of the business, without becoming an expert opinion governed by Rule 702. "Thus, in practical terms Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their personal experiences." *R&S Auto Sales v. Owners Ins. Co.*, 4:13–cv–479–RAW, 2015 WL 12434459, at *7 (S.D. Iowa Jan. 5, 2015) (quotation marks and citation omitted).

Here, defendant seeks to bar plaintiff from testing the technical knowledge of defendant's current and former employees as to certain aspects of the cage system. This questioning is entirely permissible. Jurors are entitled to know the extent of technical knowledge witnesses have about the cage system. Whether, as plaintiff argues, these witnesses reasonably should have known about these technical matters is an entirely different question; that will be for the jury to decide and determine what difference, if any, that makes. The Court anticipates that jurors would fully expect, for example, that a draftsman or salesman would not be expected to understand the role of self-tapping screws. On the other hand, jurors might reasonably expect someone charged with supervising the installation of the cage system to understand the purpose and role of such screws. Plaintiff will be permitted to explore witnesses' knowledge. What inferences, if any, jurors draw from the answers remains to be seen.

Thus, the Court **grants-in-part and denies-in-part** defendant's motion in limine on this ground. To the extent defendant seeks to bar plaintiff from questioning lay witnesses about the extent of their technical knowledge about the cage system, the Court **denies** defendant's motion. The Court, however, **grants** defendant's motion to the extent that it seeks an order barring any lay witness from opining as to the cause of the cage system's collapse. Likewise, the Court **grants** defendant's motion to the extent it seeks an order barring lay witnesses from opining as to what effect Stanley's installation had on the stability of the cage system.

52

## L.     OSHA Citations

Defendant seeks a pretrial order barring evidence or argument "relating to any OSHA citations issue[d] to [plaintiff] relating to the subject incident." (Doc. 142, at 34). Defendant acknowledges that the OSHA investigation and citation was the subject of plaintiff's motion in limine and that defendant agreed that "any OSHA citations that were issued to [plaintiff] relating to the subject incident should be excluded" as well as "the *fact* that OSHA citations were issued and/or withdrawn, the substance of those citations, or any evidence relating to settlement discussions between [plaintiff] and OSHA." (*Id.*, at 34 (emphasis defendant's)). Here, defendant "restates its agreement with [plaintiff's] motion in limine herein, and specifically moves to exclude evidence, argument, suggestion, and comment relating to any OSHA citations issued to [plaintiff] relating to the subject incident, including but not limited to any citations themselves, the fact such citations were issued and/or withdrawn, the substance of any citations, and any evidence relating to settlement discussions between [plaintiff] and OSHA relating to any citations issued." (*Id.*, at 34–35). In support, defendant relies on Federal Rules of Evidence 401–403, 408, and the hearsay rules. (*Id.*, at 35–37).

Plaintiff agrees, and argues that the "parties should be precluded from making any mention of the OSHA investigation and from introducing any portion of the OSHA file relating to that investigation, including but not limited to the withdrawn citations and employee interviews." (Doc. 153, at 31-32).

The Court addressed this issue already in ruling on plaintiff's motion in limine. Defendant's motion is **granted** to the extent that it seeks an order barring evidence and argument about OSHA citations, the citations themselves, the fact citations were issued or withdrawn, and any settlement discussions with OSHA. The Court declines to expand the ruling, at plaintiff's invitation, to bar any reference to an OSHA investigation at this point. The Court understands that one witness with personal knowledge of conditions at

53

the site was an OSHA investigator. It would be unrealistic and misleading to have this witness testify without identifying his position. The investigator need not—indeed will not be permitted under this order—testify about the death of an employee during the collapse of the cage system. The Court thinks it likely that jurors would naturally understand that an OSHA investigator would be on the scene at some point because humans worked at the facility and so it naturally follows that an OSHA investigator may investigate the scene. Thus, the Court thinks it likely the parties will not be prejudiced by the jurors merely knowing that the witness was employed by OSHA and investigated the collapse as part of his regularly assigned duties. Nevertheless, the parties were to inquire of the OSHA investigator about this topic and that will inform the Court's decision. Thus, the extent to which the OSHA investigator is permitted to discuss his employment and duties as part of the investigation will depend in part on the answer to the question of whether an OSHA investigator responds to collapses like this regardless of worker injury or death.

Thus, the Court **grants-in-part and holds in abeyance-in-part** defendant's motion in limine on this ground.

### M.    *Argument About Enforceability of Contracts*

Defendant seeks a pretrial ruling barring evidence and argument "that the Parties' written contracts are 'valid' and 'enforceable'" as well as "any argument that the jury should 'enforce' or otherwise hold [defendant] to its contractual bargain." (Doc. 142, at 38–39). Defendant does not dispute that the contract was valid and enforceable, but argues that is irrelevant as this is a negligence case and not a breach of contract case. (*Id.*, at 38). Defendant argues that the existence and scope of a legal duty is for the Court to decide and not a matter for the jury. (*Id.*). Defendant argues the contracts here are relevant only to define the scope of the duty the Court found arose from the contract here. (*Id.*). Defendant argues that to allow such evidence "would serve to confuse the issues

and mislead the jury, and result in unfair prejudice to" defendant, citing Federal Rule of Evidence 403. (*Id.*, at 39).

Plaintiff resists, arguing that "[d]uty and breach are necessary elements of [plaintiff's] negligence claim, and proving those elements will require [plaintiff] to discuss the terms of the parties' written contracts and incidentally allude to their validity and enforceability." (Doc. 153, at 32-34). Plaintiff argues that "the contractual language goes to the essence of [plaintiff's] negligence claim" and that it "must proffer evidence of the contractual language to explain the facts that predicated the creation of [defendant's] duty in tort and predicated the occasion for [defendant] to breach that duty." (*Id.*, at 33). Plaintiff argues that the "probative value of the contractual terms is weighty, and the attendant risk of unfair prejudice against [defendant] or confusion of the issues is low." (*Id.*, at 34).

Under Rule 403, the opponent must show that the danger of certain considerations, including confusion of the issues, misleading the jury, and unfair prejudice, substantially outweigh the probative value of the proffered evidence. Here, defendant cannot carry that burden. The contractual language establishing the duty to supervise assembly of the cage system is the genesis of the duty of care defendant owed in carrying out that contractually assumed duty. It follows that the contract is relevant and probative evidence of the nature and scope of that duty. Against this, defendant alludes to a vague sense of potential danger that it believes could arise from a focus on whether the contract is valid and enforceable. This carries little weight when both parties agree that is not the issue before the jury and plaintiff will not argue to the contrary. The Court's instructions will make it sufficiently clear to the jurors what is in dispute and what issues they must resolve. To the extent there is any danger of confusion of issues, misleading the jury, and unfair prejudice, it does not substantially outweigh the probative value of evidence of the contract and any incidental implication of its validity and enforceability.

Thus, the Court **denies** defendant's motion in limine on this ground.

### N.    *Argument that Defendant Should be Punished*

Defendant seeks a pretrial order barring evidence and argument that defendant should be punished, sent a message, or deterred because plaintiff is not seeking punitive damages here, citing Federal Rules of Evidence 401-403.  (Doc. 142, at 39).  Plaintiff does not resist, "provided it applies in kind to both parties."  (Doc. 153, at 34).

Thus, the Court **grants** defendant's motion in limine on this ground and the Court's ruling applies equally to both parties.

### O.    *Evidence of Defendant's Financial Condition*

Defendant seeks a pretrial order barring evidence and argument relating to defendant's financial condition or the fact that defendant has since been acquired by another company, citing Federal Rules of Evidence 401-403.  (Doc. 142, at 39–40).  Plaintiff does not resist, "provided it applies in kind to both parties."  (Doc. 153, at 34-35).

Thus, the Court **grants** defendant's motion in limine on this ground and the Court's ruling applies equally to both parties.

### P.    *Direct Appeals to Jurors*

Defendant seeks a pretrial order barring plaintiff's counsel from making a direct appeal to jurors, advocating that they place themselves in the shoes of plaintiff, the so-called "golden rule" type of argument.  (Doc. 142, at 40).  Plaintiff does not resist, "provided it applies in kind to both parties."  (Doc. 153, at 35).

Thus, the Court **grants** defendant's motion in limine on this ground and the Court's ruling applies equally to both parties.

### Q.    *Evidence of Settlement Offers*

Defendant seeks a pretrial order barring evidence and argument relating to settlements or offers to settle, citing Federal Rule of Evidence 408.  (Doc. 142, at 40–

41).  Plaintiff does not resist, "provided it applies in kind to both parties."  (Doc. 153, at 35).

Thus, the Court **grants** defendant's motion in limine on this ground and the Court's ruling applies equally to both parties.

### R.      *Evidence of Defendant's Insurance*

Defendant seeks a pretrial order barring evidence and argument relating to whether it is insured against liability, citing Federal Rule of Evidence 411.  (Doc. 142, at 41–42). Plaintiff does not resist, "provided it applies in kind to both parties."  (Doc. 153, at 35).

Thus, the Court **grants** defendant's motion in limine on this ground and the Court's ruling applies equally to both parties.

## VI.      *CONCLUSION*

For these reasons stated and as set forth above, the Court **grants-in-part, denies-in part, and holds in abeyance-in-part**, the parties' various motions in limine.  (Docs. 119, 126, 136, 138, and 139).

**IT IS SO ORDERED** this 28th day of December, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

57